## KNIGHT *v.* KERFOOT ET AL.

[No. 22,982. Filed November 19, 1915.]

1. TRIAL.—*Special Findings.—Insufficiency.—Venire de Novo.*— Under the provisions of our code a *venire de novo* should not be awarded because of the failure of the trial court to find specially on all matters in issue, but the proper remedy is by a motion for new trial. p. 39.

2. TRIAL.—*Issues.—Payment.—Conclusions of Law.*—The question of payment is a question of fact, so that the statement that certain notes were not paid has no proper place in the court's conclusions of law and must be disregarded. p. 39.

3. TRIAL.—*Venire de Novo.—When Granted.*—A motion for a *venire de novo* should be granted only where the finding is so defective, ambiguous or uncertain that no judgment can be rendered thereon. p. 39.

4. TRIAL.—*Special Findings.—Ultimate and Evidentiary Facts.— Venire de Novo.*—Though a special finding should state ultimate, and not evidentiary facts, and though a *venire de novo* should be awarded where evidentiary instead of ultimate facts are found which appear to establish the ultimate facts averred in the complaint, a motion for a *venire de novo* is not available in case of a special finding containing matters evidentiary in character, but which is not so ambiguous as to be incapable of supporting a judgment. p. 40.

5. APPEAL.—*Special Findings.—Ambiguity.—Rule of Construction.*— While in the construction of pleadings the court should give heed to fair and reasonable inference, in the case of special findings which are ambiguous the court, though not bound by narrow technical rules, is limited in its scope of inquiry to the ascertainment of the ultimate facts that were actually found by the trial court. p. 40.

6. TRIAL.—*Special Findings.—Review on Appeal.*—The duty of finding the facts is solely within the province of the trial court, and even where a special finding is composed of all the evidentiary facts admitted in evidence the court on appeal can not infer therefrom the necessary ultimate facts to warrant a recovery. p. 41.

7. APPEAL.—*Review.—Special Findings.—Conclusions of Law.*— The trial court's conclusion that plaintiff was not entitled to recover against defendant in contribution as his cosurety on notes paid by the notes of the principal signed by plaintiff alone as surety, was not erroneous in view of the special findings which, fairly construed, excluded the theory that the trial court found as an ultimate fact that plaintiff paid the notes on which defendant was his cosurety. p. 41.

8. PRINCIPAL AND SURETY.—*Cosureties.—Payment.—Indemnity.*— Where plaintiff signed two notes of his son-in-law, an insolvent debtor, which the debtor's mother signed as cosurety, and the

debtor from the proceeds of one of the notes paid notes signed by his mother as sole surety, and from the proceeds of the other discharged an indebtedness to plaintiff, and there were various renewals of the two notes so signed by plaintiff and debtor's mother, until finally the mother refused to sign any more renewals, whereupon plaintiff signed renewal notes for the debtor as sole surety, and ultimately paid same, he was not equitably entitled to hold the mother for indemnity as a principal because of the payment of the note on which she had been sole surety out of proceeds of the note signed by them as cosureties, there being nothing to show that she ever requested plaintiff to sign or that he was in any way deceived. p. 41.

9. PRINCIPAL AND SURETY.—*Payment by Surety.—Cosureties.— Contribution.*—Upon the maturity of a note a surety has the right to pay it either in notes or in cash, and to hold his cosurety for contribution; but where a surety, on the maturity of a note and the refusal of a cosurety to renew, loans his credit to the maker by signing a new note to take up the first one, and is subsequently compelled to pay the second note, he can not hold his cosurety on the first note for contribution. p. 43.

10. APPEAL.—*Review.—Findings.—Conclusiveness.*—In an action against a cosurety for contribution, where there was some evidence to show that the notes on which plaintiff and defendant were cosureties had been paid by the principal with notes executed by himself with plaintiff as sole surety, the finding against plaintiff thereon was conclusive. p. 43.

From Clay Circuit Court; *James L. Clark,* Special Judge.

Action by George A. Knight against Mary G. Kerfoot and another. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*Baker & Daniels, Sullivan & Knight, Lamb, Beasley, Douthitt & Crawford, McNutt, Wallace & Sanders, A. W. Knight* and *Edward H. Knight,* for appellant.

*C. G. Scofield* and *S. A. Hays,* for appellees.

MORRIS, J.—Suit in equity by appellant against appellees. The complaint is in four paragraphs. The first and second are based on the theory of

contribution, and seek to recover judgment against appellee, Mary G. Kerfoot, and to set aside an alleged fraudulent conveyance. The third and fourth paragraphs each seek a recovery against Mary G. Kerfoot on the theory of partial indemnity, and contribution, and to set aside an alleged fraudulent conveyance. Each appellee answered by general denial and appellee, Mary G. Kerfoot, filed a second paragraph, addressed to the entire complaint. The court overruled appellant's demurrer to this paragraph and error is assigned on this ruling, but we are of the opinion that it constituted no reversible error. The issues were tried by the court, with special findings of fact and conclusions of law. Judgment was rendered in favor of appellees. Appellant's motion for a *venire de novo* and for a new trial, which averred that the court's decision was contrary to law and not supported by sufficient evidence, were each overruled.

Error is assigned on the conclusions of law and overruling the two motions. The finding of facts, and conclusions of law, are as follows: "(1) On and prior to the 10th day of May, 1907, George Gordon Kerfoot was engaged in the hardware business as a general merchant in the city of Brazil, Indiana. The defendant, Mary G. Kerfoot, is the mother of said George Gordon Kerfoot and was on said date a widow and every since said date has been unmarried. The plaintiff is and was on said date the father-in-law of said George Gordon Kerfoot. Said George Gordon Kerfoot was on said date and at all times since largely in debt and insolvent. He was at all times since said date and until he was adjudged a bankrupt on the 25th day of February, 1909, the owner of a stock of hardware of the value of from five thousand to ten thousand dollars, but

at no time did he possess property sufficient to pay all his debts. On said date, May 10, 1907, he owed the plaintiff a large sum of money and was indebted to one or more banks in the sum of about four thousand dollars, evidenced by various notes on which defendant, Mary G. Kerfoot, was his surety. (2) On said 10th day of May, 1907, said George Gordon Kerfoot being pressed by his creditors, and unable to meet their demands, negotiated two loans of five thousand dollars each, one from the First National Bank of Brazil and one from the Riddell National Bank of Brazil, and he executed his two notes, one to each of said banks for $5,000 with the plaintiff, George A. Knight, and the defendant, Mary G. Kerfoot, as his sureties on each of said notes. Each of said notes was due in six months. On the 11th day of November, 1907, the note at the First National Bank was renewed by executing a new note for $5,000 due in six months with George A. Knight and Mary G. Kerfoot as sureties and said George Gordon Kerfoot as principal. On May 11, 1908, a loan of $5,000 was negotiated by said George Gordon Kerfoot from the Citizens National Bank of Brazil and his note executed to said bank for said sum due in ninety days with George A. Knight and Mary G. Kerfoot as his sureties, and $4,500 of said new loan was applied on the payment of said note to said First National Bank and the remaining $500 due said bank on said note was afterwards paid by said Kerfoot. On the 11th day of November, 1907, the note at said Riddell National Bank was renewed by the execution of a new note for $5,000 due in sixty days with said George Gordon Kerfoot as principal and said George A. Knight and Mary G. Kerfoot as sureties. At the maturity of said last note said George Gordon Kerfoot paid $500 thereon and gave his note for $4,500 in renewal of the

balance of said amount with said George A. Knight
and Mary G. Kerfoot as his sureties. On the 10th
day of April, 1908, at the maturity of said $4,500
note said George Gordon Kerfoot was unable to pay
the same or the advance interest on a renewal there-
of and he executed his note to said bank for $4,600
due in four months with said George A. Knight and
Mary G. Kerfoot as his sureties, being in renewal of
said $4,500 note and for a new loan of $100, a part of
which was applied to the payment of interest in ad-
vance. So that on the 10th day of August, 1908,
said George Gordon Kerfoot owed said two banks
the sum of $9,600 as evidenced by said two notes
executed by himself as principal and said George A.
Knight and Mary G. Kerfoot as his sureties thereon.
Each of said notes last referred to were negotiable
promissory notes and bore interest at the rate of six
per cent per annum before maturity and eight
per cent per annum after maturity, and were pay-
able without any relief from valuation or appraise-
ment laws and the drawers and endorsers severally
waived presentment for payment, protest and notice
of protest and nonpayment of said notes. (3)
On the 10th day of August, 1908, said George Gordon
Kerfoot owned a stock of hardware of the value of
from $5,000 to $10,000, but was insolvent and un-
able to pay his debts and had no available funds to
apply on either of said notes. Neither he nor his
sureties had any valid defense to said notes and the
holders of said notes were demanding payment
thereof. He made an effort to again renew said notes
and requested the said Mary G. Kerfoot to again
become surety with said Knight on renewal notes
for said outstanding notes and she refused to sign or
become surety on any notes for the renewal of said
notes or for any sum or purpose whatever. At that
time said Mary G. Kerfoot was possessed of suffi-

cient property, including that conveyed to her co-defendant, to enable her to pay all of her liability on said notes. Upon the refusal of said Mary G. Kerfoot to become surety for any renewal of said notes said George Knight was informed of such refusal, and to prevent suit on said notes, and because of the insolvency of said George Gordon Kerfoot, said Knight alone became surety for said George Gordon Kerfoot on two notes, one to the Citizens National Bank for $5,000 with said Kerfoot as principal and Knight as surety, dated August 10, 1908, and due in three months in renewal of said note held by said bank and one to the Riddell National Bank for $4,600, with said Kerfoot as principal and Knight as surety and due in three months in renewal of said note held by said bank. Said note to said Citizens National Bank was delivered by said Kerfoot to said bank in payment of said old note and said old note was by said bank marked paid and delivered to said Kerfoot and by him delivered to said Knight. Said note to said Riddell National Bank was delivered by said Kerfoot to said bank in payment of said old note and after consultation with said Knight by an officer of said bank was accepted by said bank and said old note marked paid and delivered to said Knight, and said Knight has ever since retained possession of both of said notes. Said Kerfoot paid the interest in advance on said new notes. (4) At the time of the making and acceptance of each and all of said notes executed by said George Gordon Kerfoot as principal and said George A. Knight and Mary G. Kerfoot as sureties and by said George Gordon Kerfoot as principal and said George A. Knight as surety the officers of said banks accepting said notes understood that said George Gordon Kerfoot was insolvent and they believed that the sureties or surety on said notes would event-

ually have said notes to pay and they accepted said notes because of the financial standing of the sureties or surety. At the time of the execution of said new notes by said George Gordon Kerfoot and said Knight on the 10th day of August, 1908, and the using of said notes in renewal of said old notes, said Knight and said Mary. G. Kerfoot each knew that said George Gordon Kerfoot was insolvent and unable to pay said notes and that at that time he was unable to pay any part thereof, and said Knight understood and believed that he would have said new notes to pay in full as surety and he at that time intended to hold said Mary G. Kerfoot responsible to him as cosurety in contribution on said old notes so taken up by said new notes executed by said George Gordon Kerfoot and said Knight alone. Said Mary G. Kerfoot did not advise or consent to the making of said new notes by said George Gordon Kerfoot and said Knight, nor did she make any objection thereto. (5) On the maturity of said last notes said Kerfoot as principal and said Knight as surety again renewed said notes for a period of three months by executing new notes, the note to said Riddell National Bank being for $4,700 and including a new loan of $100. Said Kerfoot with said new loan of $100 and other funds paid the interest in advance to maturity on said new notes. When said last renewal notes of said Kerfoot and Knight matured said Knight paid each of them by executing his individual notes, which he in a short time paid in full in cash, the said Kerfoot paying no part thereof. (6) On the 25th day of February, 1909, said George Gordon Kerfoot was adjudged a voluntary bankrupt in the District Court of the United States for the District of Indiana. When the said Knight paid the last notes executed by said Kerfoot as principal and Knight as surety, said

Knight took an assignment of each of said notes from the banks holding the same and he subsequently filed said notes in said bankruptcy proceedings as claims against said Kerfoot and received as his distributive share on said $5,000 note the sum of $277.92 and on said $4,700 note the sum of $216.24, which sums he still retains. (7) Prior to the commencement of this action the defendant, Mary G. Kerfoot, was the owner of the real estate described in the complaint and to which description reference is here made for particularity, and she conveyed the same to her codefendant, John B. Kerfoot. On the trial of this cause said defendants in open court, as a part of the record in this case: 'admit for the purposes of this case that if the plaintiff is entitled to recover a personal judgment upon either paragraph of his complaint from the defendant Mary G. Kerfoot, then the property which is conveyed to John B. Kerfoot is subject to be sold for the payment of the judgment or recovery, and all deeds set aside as far as this plaintiff is concerned.' And the court finds that said deeds are invalid as against any judgment the plaintiff may recover in this case. James L. Clark, Special Judge. On the foregoing facts the court concludes the law to be: (1) That the payment of the notes of George Gordon Kerfoot as principal and George A. Knight and Mary G. Kerfoot as sureties by the execution of the new notes with said George Gordon Kerfoot as principal and said George A. Knight as sole surety, was not a payment of said notes by said Knight. (2) That said Knight is not entitled to recover judgment against said Mary G. Kerfoot in contribution as his cosurety on said notes so paid by the notes of said George Gordon Kerfoot and said Knight. James L. Clark, Special Judge.''

Did the court err in overruling appellant's motion

Knight *v.* Kerfoot—184 Ind. 31.

for a *venire de novo?*   There was no finding on the issue of partial indemnity.   At common law the recognized rule was to award a *venire de novo*, where, in a general or special finding, all the issuable facts were not found.   2 Tidds, Practice 922.   This rule was recognized in *Bosseker* v. *Cramer* (1862), 18 Ind. 44, 47, and was followed until 1879, when, in *Graham* v. *State, ex rel.* (1879), 66 Ind. 386, 394, this court declared that, because of certain provisions of our civil code, this common-law rule was not applicable to a special finding made by the court, and since then it has ever been held that a *venire de novo* should not be awarded because of the failure of the trial court to find specially on all matters in issue, but that in such case the only proper remedy is by a motion for a new trial.   *Maxwell* v. *Wright* (1903), 160 Ind. 515, 67 N. E. 267, and authorities cited.

It is further claimed that the court erred in overruling the motion for a *venire de novo*, because, as asserted, the finding consists of evidentiary, rather than ultimate facts.   The material ultimate fact in issue on the question of contribution was the payment to the bank of the notes executed by appellant and Mrs. Kerfoot, as sureties.   If appellant paid them he was entitled to a judgment against his cosurety for contribution. If the principal paid them, he was entitled to no relief.   The first conclusion of law contains a statement that appellant did not pay the notes.   The question of payment was one of fact, not law, and the statement had no proper place in the conclusions, and, therefore, must be disregarded.   A motion for a *venire de novo* should be granted only where the finding is so defective, ambiguous or uncertain that no judgment can be rendered on it.   2 Elliott, Gen. Prac. §935; *Ginther* v. *Rochester*

1.

2.

3.

*Improvement Co.* (1910), 46 Ind. App. 378, 385, 92 N. E. 698.

A special finding should state ultimate, not evidentiary facts. The finding here is subject to the criticism of stating some matters which are 4. merely evidentiary in character, but it is found that George Gordon Kerfoot, principal, delivered the two notes, dated August 10, 1908, signed by appellant as sole surety, to the two banks, in payment of the old notes, and that the banks accepted them. While it is found that George Gordon Kerfoot was insolvent at the time, and that appellant believed he would be compelled to pay the new notes and intended then to hold Mary G. Kerfoot liable for contribution, we are constrained to hold that the findings are not so ambiguous as to render them incapable of supporting a judgment for appellees. Where evidentiary, rather than ultimate, facts are found, and it appears that such evidentiary facts establish the ultimate ones averred in the complaint, a *venire de novo* should be awarded. *Maxwell* v. *Wright, supra,* 518. The findings here, however, do not fall within the scope of such rule. There was no error in overruling the motion for a *venire de novo.*

Did the court err in its second conclusion of law as claimed by appellant? His learned counsel concede that such assault assumes that the facts 5. were fully and correctly found, but contend that, considering the findings as a whole, this court is warranted in inferring the existence of the ultimate fact claimed—that appellant paid the notes. In construing a pleading it is the duty of a court to give heed to fair and reasonable inference. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. It may, because of ambiguous phraseology, be sometimes nec-

essary to construe special findings, and in such case courts of review should not be bound by narrow technical rules, but the scope of inquiry, in such case is limited to the ascertainment of the ultimate facts that were actually found by the trial court.

6. It is the sole duty of the latter court to find such facts, and power to invade that province is denied to a court of review. Were the findings here composed of all the evidentiary facts admitted in evidence, this court could not infer the necessary ultimate facts to warrant a recovery. *Whitcomb* v. *Smith* (1890), 123 Ind. 329, 332, 24 N. E. 109; *Horn* v. *Lupton* (1914), 182 Ind. 355, 361, 105 N. E. 237. Such situation might, however, warrant the granting of a proper motion for a *venire de novo. Maxwell* v. *Wright, supra.* We are

7. of the opinion that a fair construction of the findings excludes the theory that the trial court found as an ultimate fact that appellant paid the notes on which Mrs. Kerfoot was surety, and, in the absence of such finding, the trial court's second conclusion of law was not erroneous.

It is contended that the court erred in overruling the motion for a new trial, because, as claimed, the

8. undisputed evidence shows that appellant was entitled to recover on the issue of indemnity tendered by the third and fourth paragraphs of complaint. The evidence shows, without dispute, that as early as 1905, the First National Bank of Brazil held notes for $4,000 executed by George G. Kerfoot as principal and his mother as sole surety. These notes were renewed from time to time, and the debt evidenced thereby was in existence until May 10, 1907, when it was paid out of the proceeds of the $5,000 note executed to said bank by George G. and Mary G. Kerfoot and appellant. During the entire life of the $4,000 debt

George G. Kerfoot was insolvent, although he was conducting a hardware business with a stock worth at least from $5,000 to $10,000. At that time George G. Kerfoot was indebted to appellant in the sum of $3,850, and he stated to appellant that he was indebted in the sum of $10,000; that his creditors were threatening to close up his business, and he asked appellant to become his surety for loans of $10,000 to enable him to pay his debts, including that due to appellant. At first the request was refused, but after consideration, appellant informed George G. Kerfoot that if Mary G. Kerfoot would also execute the proposed notes he would sign them. Thereupon George G. Kerfoot signed two notes of $5,000 each, payable to the First and Riddell National Banks respectively, procured his mother's signature thereto and presented them to appellant, who joined in the execution thereof. On these notes George G. Kerfoot negotiated loans at the two banks, on May 10, 1907. From the proceeds of the loan at the Riddell bank he paid appellant the debt of $3,850. After May 10, 1907, there were various renewals of the two notes, with a reduction in the principal of one of them to the extent of $400 until August 10, 1908, when Mary G. Kerfoot refused to execute any more renewals. Thereupon notes were executed to the banks by George G. Kerfoot and appellant to take up the last renewal notes executed by Mary G. Kerfoot. After further renewals by George G. Kerfoot and appellant the debt was finally paid by appellant. He recovered a small portion thereof ($539.16) from the trustee in bankruptcy of George G. Kerfoot.

On May 10, 1907, when appellant joined in the execution of the $5,000 note to the First National Bank, he did not know that George G. Kerfoot was indebted to the bank by notes theretofore ex-

ecuted by his mother as sole surety, and he did not know that George G. Kerfoot intended to apply $4,000 of the proceeds of the proposed loan to the payment of said notes. However, there is no evidence that Mary G. Kerfoot requested appellant to become surety on either note he executed on May 10, 1907. If appellant was deceived in any way in relation to the $4,000 debt, Mrs. Kerfoot did not participate in the deception.

Appellant contends that as to the $4,000 debt on which she was bound as sole surety for an insolvent principal, Mary G. Kerfoot occupied the relation of principal to appellant when the debt was paid from the proceeds of the $5,000 note executed by him as surety on May 10, 1907, and that, in a court of equity which disregards the form and looks only to the substance of a transaction, she must be held liable to indemnify appellant for the final payment of the debt. We can not agree with this view of the law. The evidence does not warrant the conclusion that as between Mrs. Kerfoot and appellant she occupied the relation of principal to any portion of the debt. Her liability, if any, under the evidence must be sought in the law relating to contribution between sureties.

It is earnestly contended by appellant's counsel that the court erred in overruling the motion for a new trial because, as claimed, the uncontradicted evidence discloses Mrs. Kerfoot's liability to contribution. This question is answered by determining who paid the notes which were taken up by the two notes, dated August 10, 1908, executed by appellant and George G. Kerfoot. The undisputed evidence shows that immediately prior to August 10, 1908, all parties regarded George G. Kerfoot as insolvent, though he owned considerable

property; that the banks were demanding either renewal or payment of the two notes then due and that Mrs. Kerfoot refused to execute renewal notes. Appellant had the right to pay these notes, either in cash, or with any notes acceptable to the banks, in which event Mrs. Kerfoot's liability to contribute would have been fixed, and on discharging such liability she would have had the right to subject the hardware stock to sale to satisfy her debt. Appellant also had the right to loan his credit to his son-in-law in the form of notes executed by him as surety with which the son-in-law should take up the notes then due. In such event Mrs. Kerfoot was not liable.

John B. Kerfoot, appellee, a son of Mrs. Kerfoot, testified that, at his mother's request, in the latter part of July, 1908, he had a conversation with appellant, in which he told him that Mrs. Kerfoot would refuse to execute further renewals of the notes, and insisted that the store be closed and the stock sold to pay the debts. Knight replied that the matter was none of Kerfoot's business, and that he should let it alone. George G. Kerfoot, among other things, testified that about August 10, 1908, he informed appellant that Mrs. Kerfoot refused to execute further renewals of the notes. Appellant asked why she refused. The witness told him "she feels I can't make it and they are going to close the store up and settle it up." Appellant replied, "Well I suppose that is some of John's work." Witness filled out the new notes dated August 10, 1908, and appellant said, "Bring those notes in and I will sign them." He then told witness to take them to the banks and take up the old notes. Nothing was said at the time about holding Mrs. Kerfoot for contribution. Witness took one of the notes to the Riddell National Bank, but the latter refused to ac-

cept it, and witness brought appellant to the bank, whereupon the note was accepted, and the old note was stamped "paid," and handed by the bank officer to appellant. Witness and appellant then left the bank and appellant handed witness the paid note, saying "Gord., destroy that note; I don't want it laying around with my signature on it." Witness returned the note to appellant and said "destroy it yourself." Witness paid in advance the interest on the new note by his individual check. Appellant and witness then went to the Citizens bank and appellant told Mr. Morgan, a bank officer, to "give Gord. that note." Witness handed Morgan the new note, and his individual check for advance interest. Morgan handed witness the old note stamped "paid." After passing outside the bank, witness gave the paid note to appellant. In November, 1908, these notes were renewed, and witness paid the advance interest.

The cause was tried on an amended complaint. Appellees introduced in evidence paragraph one of the original complaint, wherein appellant alleged among other things that the notes given August 10, 1908, were executed by G. G. Kerfoot as principal and appellant as sole surety.

Appellant testified that George G. Kerfoot married his daughter in 1894; that Kerfoot was always, since then, insolvent; that appellant had, since the marriage, made various valuable gifts to the daughter and her husband; that in July, 1908, he gave the latter $1,400 to prevent creditors from closing the store, and on January 15, 1909, he signed as his surety a note for $2,000; at that time appellant expected to pay the note, and afterwards did so; that he signed that note, as well as the ones of August 10, 1908, out of sympathy for his daughter and to help them to get along, and because of the son-in-law's

representations that he would be able to "tide it over." In February, 1909, appellant advised the son-in-law to file his voluntary petition in bankruptcy, which was done. In some material matters there is a sharp conflict between the testimony of appellant and that of George G. and John B. Kerfoot.

There is evidence to sustain the finding that George G. Kerfoot paid the notes on which Mrs. Kerfoot and appellant were sureties with notes executed by himself with appellant as sole surety, and the judgment is affirmed.

NOTE.—Reported in 110 N. E. 206. What is deemed to be invasion by the court of the jury's province, see 14 Am. St. 36. On correction of special verdict by *venire de novo*, see 24 L. R. A. (N. S.) 74. See, also, under (1, 3) 38 Cyc 1990; (2) 38 Cyc 1962, 1978; (4) 38 Cyc 1980, 1990; (5) 38 Cyc 1980; (6) 38 Cyc 1982; (8) 32 Cyc 277; (9) 32 Cyc 280, 285; (10) 3 Cyc 360.