TERRY v. DAVENPORT ET AL.

[No. 22,958.    Filed June 2, 1916.    Rehearing denied November
10, 1916.]

1.  TRUSTS.—Constructive Trust.—Resulting Trust.—A constructive
trust is an implied one, differing from a resulting trust, also im-
plied, in lacking the element of intention to create a trust, such a
trust arising by operation of law regardless of intention and fre-
quently contrary thereto and having its roots in fraud, actual or
constructive, as an essential ingredient.  p. 571.

2.  TRUSTS. — Constructive Trusts. — Special Findings. — Fraud. —
Where, in an action to quiet title, defendant filed a cross-complaint
seeking to establish a constructive trust in lands because the deed
thereto had been obtained by the fraud of plaintiff's predecessor
in title, the special findings are held not to have found the existence
of such fraud as an ultimate fact.  pp. 572, 573.

3.  APPEAL.—Special Findings.—Review on Appeal.—Even though
special findings contain evidentiary facts from which an ultimate
·fact might be inferred, the drawing of such inference belongs ex-
clusively to the domain of the trial court, which may not be in-
vaded by the appellate tribunal.  p. 572.

4.  TRIAL.—Special Findings.—Evidentiary Facts.—Where merely
evidentiary facts appear in a special finding, they must be disre-
garded in considering the question of the proper conclusion of law
on the ultimate facts found.  p. 572.

5.  TRUSTS.—Constructive Trusts.—Fraud.—Special Findings.—In an
action to quiet title wherein defendant filed a cross-complaint
which sought to have a constructive trust established because of
the fraud of plaintiff's predecessor in title, a finding of the existence
of such predecessor's fraud, either actual or constructive, as an
ultimate fact, was necessary to a recovery on the cross-complaint,
and the lack of such finding was not supplied by findings of badges
of fraud, fiduciary relations, or other mere evidences or rebuttable
presumptions of fraud.  p. 572.

6.  LIMITATION OF ACTION.—Statutes of Limitation.—Scope and
Application.—Since the adoption of the Civil Code, there has been

but one form of action for the enforcement of private rights, distinctions between actions at law and suits in equity having been abolished (§249 Burns 1914, §249 R. S. 1881), and statutes of limitation apply alike to suits formerly cognizable at law or in equity. p. 574.

7. TRUSTS.—*Express Trusts.*—*Limitation. of Actions.*—In cases of express continuing trusts, the statutes of limitation will not commence to run until the trustee repudiates the trust, since his possession is presumed to be that of the beneficiary. p. 574.

8. TRUSTS.—*Parol Trust in Lands.*—*Statute.*—Under §4012 Burns 1914, §2969 R. S. 1881, providing that no trust concerning lands shall be created unless in writing, an express trust cannot be impressed on lands where it is in parol. p. 574.

9. TRUSTS.—*Constructive Trusts.*—*Equitable Relief.*—The relief granted in constructive trust cases is not measured by the fraudulent promises of the wrongdoer, but may be contrary thereto, and where fraud, the basis of constructive trusts, is shown, relief is administered in consonance with equity rules. p. 575.

10. LIMITATION OF ACTIONS.—*Concealment of Cause of Action.*—*Statute.*—Under the provisions of §302 Burns 1914, §300 R. S. 1881, where a person liable to an action conceals the fact from the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause. p. 575.

11. LIMITATION OF ACTIONS.—*Concealment of Cause of Action.*—*Burden of Proof.*—Where, in an action to quiet title, a cross-complaint sets up matters presumably barred by the statute of limitations and alleging a concealment of the cause of action, the burden on the issue of concealment is on the cross-complainant. p. 575.

12. LIMITATION OF ACTIONS.—*Concealment of Cause of Action.*—*Statute.*—Under §302 Burns 1914, §300 R. S. 1881, providing that if any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action, the concealment meant does not consist of mere silence or general declarations, but there must have been some trick or artifice to prevent discovery, or some material fact concealed by positive or affirmative act or deed. p. 576.

13. LIMITATION OF ACTIONS.—*Statutes of Limitation.*—*Application to Constructive Trusts.*—Statutes of limitation are applicable to constructive trusts. p. 576.

14. LIMITATION OF ACTIONS.—*Statutes of Limitation.*—*Defensive Character.*—Generally speaking, statutes of limitation are laws of repose, which merely affect the remedy, and are available only as defenses. p. 576.

15. ADVERSE POSSESSION.—*Title Acquired.*—*Use of Title.*—Open, notorious, exclusive, uninterrupted and adverse possession of real estate for twenty years, regardless of color of title, is as effectual

to confer complete title on the occupant as a grant, and he may use the title so acquired as a defense or as a means to recover a possession lost after its acquisition. p. 576.

16. WITNESSES.—*Competency.*—*Statutes.*—Under §522 Burns 1914, §499 R. S. 1881, providing that in all suits against heirs or devisees to obtain title to, or possession of, the property of an ancestor, neither party shall be a competent witness as to any matter occurring prior to the death of such ancestor, and under §525 Burns 1914, §501 R. S. 1881, providing that when the husband or wife is a party, and not a competent witness, the other shall be excluded, in an action by devisees to quiet title against the daughter of a testator's sister, such daughter's husband was incompetent to testify as to a transaction between the testator and his sister. p. 577.

From Pulaski Circuit Court; *Isaiah Comer,* Special Judge.

Action by John A. Davenport and others against Mary E. Terry. From a judgment for plaintiffs, the defendant appeals. (Transferred from Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*McConnell, Jenkines, Jenkines & Stuart, Milo M. Bruce, Lincoln. V. Cravens* and *John G. Reidelbach,* for appellant.

*Ralph E. Horner, Robert E. Thompson, John M. Spangler* and *Gavin & Gavin,* for appellees.

MORRIS, J.—This was an action by appellees to quiet title to certain lands in Pulaski county. Appellant filed a cross-complaint in which she claims an equitable title to portions of the land based on an alleged constructive trust, and she seeks recovery of possession thereof. Appellees answered the cross-complaint with a general denial, and pleas of the fifteen and the twenty-year limitation statutes. §§295, 296 Burns 1914, §§293, 294 R. S. 1881. The land in question was originally owned by John Davenport, who had three children, Albert and Charles Davenport and Ruth Gundrum, all of whom are dead. Appellant is the daughter and only heir

of Ruth Gundrum, while appellees are the children and grandchildren of Charles Davenport, and claim title as devisees of Albert. The court found the facts specially, and stated its conclusions of law in favor of appellees on the issues formed by the complaint and cross-complaint. Appellant excepted to each conclusion. Judgment was rendered for appellees quieting their title. Appellant's motions for a *venire de novo* and a new trial were each overruled. Error is assigned on the conclusions of law and rulings on the motions.

We here set out the substance of the several findings (thirty) and, in some instances, the whole thereof. On July 8, 1861, John Davenport owned, in fee simple, 754 acres of land in Pulaski county and lived on a portion of it. Albert then lived on his father's land in a residence across a highway from that of his father. Ruth Gundrum's husband had died in 1859, and afterwards until her death in 1888, she lived in her father's residence. Charles moved to Iowa in 1855, where he lived until his death in 1905. John Davenport's wife was ten years younger than he. Neither could read nor write, and for assistance in business affairs they depended largely on Albert who was a shrewd, capable and experienced business man, and they reposed confidence in his honesty. At the time, John owned personalty worth $8,000, but was surety on the bond of a defaulting clerk of the Pulaski circuit court. Albert told his parents of the defalcation, and stated that his father would lose all his land if not conveyed to him. At first the parents refused to make a deed, but afterwards Albert promised a reconveyance of the lands after the settlement of the clerk's liabilities, and, relying on the promises and statements, the requested deed was made, conveying all the land to Albert excepting forty acres.

One hundred and twenty acres of this land in section 1, township 30, range 2, included the portion on which Albert was then residing, and it was afterwards, until his death in 1906, occupied by him as his homestead.   For eighty acres of this land Albert paid his father the sum of $300 in gold and for the remaining forty acres he paid $400, and for ten acres of timber land in another section he paid $10 per acre.   The deed was recorded on the day of its execution.   When the deed was made, the father had no knowledge of the facts concerning the clerk's defalcations, but believed the statements in reference thereto made by Albert.   John's liability on the bond was subsequently discharged in 1863 by the payment of $90.   After the execution of the deed of July 8, 1861, John Davenport continued in the possession and control of the land conveyed to Albert.   In March, 1862, Albert, with his father's approval, sold and conveyed for $400 to one Parnell 100 acres of the land conveyed by the deed of July 8, 1861, and in 1864 conveyed two acres thereof to one Myers.   In October, 1865, Albert reconveyed to his father all the land described in the deed of 1861, excepting 270 acres.   The exception included the 120-acre homestead of Albert, and forty acres adjoining in section 1, township 30, range 2; also the land conveyed in the meanwhile to third parties. The deed also conveyed to John ten acres, not included in the deed of July 8, 1861.   The wife of John died in 1874.   On April 14, 1879, John executed a deed to Albert for 130 acres here claimed by appellant located in sections 2 and 11, township 30, range 2.   The deed was recorded but Albert never claimed title under such deed.   On April 14, 1879, John conveyed to Ruth by deed the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of section 2, town-

ship 30, range 2. The description in the deed contained a repetition of the description of the northeast quarter of the southeast quarter. The land described in Ruth's deed is not in controversy here. On January 28, 1869, John Davenport executed his will, by which he bequeathed to his sons Albert and Charles legacies of $300 each, and devised to a foster child fifty-nine acres of land not in controversy. The remainder of the estate was devised and bequeathed to the daughter Ruth. John died October 6, 1879, and his will was probated three days later.

Findings numbered 13, 14, and 15, on which appellant specially relies, are as follows: "Thirteenth: That said Ruth Gundrum was a person of mature years and of sound mind; and she and her brothers Albert Davenport and Charles L. Davenport met at the home of said Albert on the 13th day of October, 1879, for the purpose of talking over their respective interests and rights in the estate of John Davenport, they being his only heirs, at which time the said Ruth Gundrum executed a warranty deed to Albert Davenport, the said Charles L. Davenport joining therein for the Southeast Quarter of the Southeast Quarter of Section Two (2), Township Thirty (30) North, Range Two (2) West; the North half of the Northeast Quarter, ten (10) acres off of the North side of the Southeast Quarter of the Northeast Quarter of Section Eleven (11), Township Thirty (30) North, Range Two (2) West containing One Hundred and Thirty (130) acres more or less, which deed is recorded in Deed Record '28', at page 349 of Pulaski County, Indiana. That Ruth Gundrum, together with Albert Davenport, at the same time executed to Charles L. Davenport, a deed to the Southeast Quarter of the Northeast Quarter of Section Two (2), Township Thirty (30) North, Range Two (2) West, in Pulaski

County, Indiana, and Albert Davenport and Charles L. Davenport executed their warranty deed to Ruth Gundrum for the Northeast Quarter of the Southeast Quarter of Section Two (2), Township Thirty (30) North, Range Two (2) West, which deed was never recorded. Each of which deeds was acknowledged by the respective grantors. Which last described deed is and has been in the possession of the cross-complainant.

"Fourteenth: That on the 15th and 16th days of October, 1879, ten days after John Davenport's death, there were recorded in the Recorder's office of Pulaski County, Indiana, two Warranty Deeds purporting to have been executed by John Davenport on the 14th day of April, 1879, which was six months before his death. By one of these deeds, John Davenport conveys to Albert Davenport the same real estate as that described in the deed procured from Ruth Gundrum as set out in the last preceding finding, to-wit: The Southeast Quarter of Section Two (2); ten acres off of the North side of the Southeast Quarter of the Northeast Quarter, and the North half of the Northeast Quarter of Section Eleven (11), all in Township Thirty (30), North, Range Two (2) West, Pulaski County, Indiana. The second deed of that date, April 14, 1879, conveys to Ruth Gundrum certain real estate described in the language of the deed, as follows: The Southeast Quarter of the Northeast Quarter, and the Northeast Quarter of the Southeast Quarter of Section Two (2), Township No. Thirty (30) North, Range Two (2) West, containing eighty acres more or less, and the Northeast Quarter of the Southeast Quarter of Section No. Two (2), Township No. Thirty (30) North, Range No. Two (2) West, containing forty acres more or less.

"John Davenport was then about seventy-nine

years of age, growing weak in body and mind, and easily influenced by his son, Albert Davenport. Albert Davenport pretended to his father that he was not able to take care of said real estate, and was in danger of losing it; and that he would take care of it for his father, if he would place the legal title in him, the said Albert Davenport; and that he would convey the same to Ruth Gundrum, upon his father's death pursuant to his father's will. At the time of the execution of these two deeds Albert Davenport knew that by the terms of his father's will Ruth Gundrum was the residuary legatee, and that at his father's death the real estate described in both these deeds would go to Ruth Gundrum, and that his father so intended, and that the deed to Ruth Gundrum contained an erroneous description, and that it was his father's wish that his daughter, Ruth Gundrum, should have the Southeast Quarter of the Southeast Quarter of Section Two (2) West, which was a part of the old homestead, and yet he, Albert Davenport caused said forty-acre tract to be described in his deed to himself and permitted the deed to Ruth Gundrum to be so erroneously drafted as to create the impression that it conveyed 120 acres, including the old homestead forty, said Southeast Quarter of the Southeast Quarter of said Section Two (2) on which was situated the orchard and cellar, while in fact another forty acre tract was described twice. John Davenport from the date of these two deeds of conveyance, April 14th, 1879, to his death continued to retain absolute possession, control and dominion of the real estate conveyed; and on September 13th, 1879, twenty-three days before his death, he conveyed by Warranty Deed to Monroe Township, for school purposes a part of the North half of the Northeast Quarter of said Section

Eleven (11), Township Thirty (30) North, Range Two (2) West, being a part of the lands described in said deed to Albert Davenport. Albert Davenport himself never asserted title to these lands by virtue of this deed of his father to him, neither in the life time of his father nor afterwards. Immediately after his father's death, Albert Davenport recognized and acknowledged Ruth Gundrum's superior right and title to these lands by virtue of their father's will and sought and attempted to procure title to them by the means set out and described in the last preceding finding.

"Fifteenth: That a very few days after the recording of the two deeds, April 14th, 1879, described in the last preceding finding, Ruth Gundrum was informed of the fact, and learned of their execution and of their contents for the first time, and immediately sent for her brother Albert Davenport. He came and stated to her, after a half hours stay among other things that 'he would make it alright'. Ruth Gundrum lived in the homestead across the highway from Albert Davenport until her death and he maintained friendly, intimate and confidential relations with her. That the Ruth referred to in these findings was Ruth Gundrum and the Mrs. Terry referred to in these findings is the cross-complainant Mary E. Terry."

Albert Davenport died testate in 1906, and by his will, duly probated, devised all his real estate to the four children of his brother Charles. These children were plaintiffs below. While the suit was pending, one of them died, and its heirs were substituted. Ruth Gundrum died intestate in 1888, and appellant is her only heir. Appellant lived with her mother at the John Davenport residence, a mile north of Winamac, until 1872 when she married, and has since resided at Winamac. She did not discover the

facts set out in the findings until March, 1906. This action was commenced in 1909.

The concluding clause in the finding No. 18 is as follows: "That neither John Davenport nor Ruth Gundrum discovered or knew of the fraud in these findings stated while they lived and neither of them knew that Albert Davenport did not intend to execute said trusts in compliance with their terms."

Finding No. 25, relating to the 120-acre homestead occupied by Albert, is as follows: "That said Albert Davenport under said deed of John Davenport, dated July 8th, 1861, took possession of said North half of the Southwest Quarter of Section One (1), and the Southeast Quarter of the Southwest Quarter of Section One (1), Township Thirty (30) North, Range Two (2) West, about the year 1865, and has ever since remained in the open, notorious exclusive adverse possession of said real estate, as against John Davenport, Ruth Gundrum and the Cross-complainant or any person claiming adversely under or through them, claiming to own same, fenced and ditched, farmed the tillable part thereof, paid taxes thereon from the year 1862 until the date of his death which occurred February 10th, 1906. That the plaintiffs herein and cross-defendants John A. Davenport, Lincoln H. Davenport, Jesse C. Davenport and Laura D. Correll, devisees of said Albert Davenport since the death of said Albert Davenport have been continuously, and are now in the open, notorious, exclusive, adverse possession of said real estate claiming to own the same, as against said John Davenport, Ruth Gundrum, Mary E. Terry or any person claiming adversely under or through them."

Finding No. 26 relates to the other lands claimed by appellant, located in sections 2 and 11, township 30, range 2, and states that, after the execution of

the deed from Ruth and Charles to him on October 13, 1879, Albert "took possession" of the lands, and "remained in the open, notorious, exclusive and adverse possession of" them until his death; that in the meantime he fenced and farmed the tillable parts of the lands, built a house and barn thereon, cut and removed timber therefrom, defended a proceeding for a highway through the land, and paid taxes thereon from 1880 to the time of his death; that since then appellees have exercised like possession.

Albert Davenport lived in a residence situated on the northwest quarter of the southwest quarter of section 1, township 30, range 2, from 1863 to the time of his death. This residence was separated from that of his father by a north and south highway leading to Winamac, a mile distant south. Albert and appellees have paid taxes on the land in question in an amount above $3,000. There is no finding as to the value of the land at any period. The land described in appellant's cross-complaint includes the 120 acres in section 1, occupied by Albert as a homestead, and the land described in John's deed to Ruth of April 14, 1879, and fifteen acres in section 11 owned by John in 1861.

Did the court err in its conclusions of law? Appellant's theory is that a constructive trust is shown by the facts found. A constructive trust is 1. an implied one. It differs from a resulting trust, also implied, in lacking the element of an intention to create a trust. 39 Cyc 27. A constructive trust arises by operation of law, regardless of any intention to create it, and frequently contrary to the intention of the parties. It has its roots in fraud, actual or constructive, which constitutes an essential ingredient. *Wright* v. *Moody* (1888), 116 Ind. 175, 18 N. E. 608;

*Alexander* v. *Spaulding* (1902), 160 Ind. 176, 181, 66 N. E. 694, and authorities cited. Appellees contend that aside from all questions of laches, statutes of limitations, and title by adverse possession for more than twenty years, the ultimate fact of fraud on the part of Albert Davenport is not revealed in the findings, and we are constrained to adopt that view. It is true that the findings contain evidentiary facts, from which the trial court might have inferred the ultimate fact of fraud, but such inference belongs exclusively to the domain of the trial court which may not be invaded by an appellate tribunal. If merely evidentiary facts do appear in a finding, they must be disregarded in considering the question of the proper conclusion of law on the ultimate facts found. *Horn* v. *Lupton* (1914), 182 Ind. 355, 105 N. E. 237, 106 N. E. 708; *Knight* v. *Kerfoot* (1915), 184 Ind. 31, 110 N. E. 206; *Coffinberry* v. *McClellan* (1904), 164 Ind. 131, 73 N. E. 97. The existence of fraud, actual or constructive, as an ultimate fact, was necessary to appellant's right of recovery on her cross-complaint. The lack of such finding here is not supplied by findings of badges of fraud, fiduciary relations, or other mere evidences or rebuttable presumptions of fraud. *Farmers Loan, etc., Co.* v. *Canada, etc., R. Co.* (1891), 127 Ind. 250, 269, 26 N. E. 784, 11 L. R. A. 740, and authorities cited; *Alberts* v. *Baker* (1898), 21 Ind. App. 373, 52 N. E. 469. The findings contain some apparent contradictions, caused probably by the attempt of the trial judge to utilize as much as possible of the findings prepared for him by counsel of the opposing parties. Our attention is especially directed to the concluding clause of finding No. 18, heretofore quoted. This clause probably relates to the deed

executed April 14, 1879, by John to Albert. The court, however, in express terms finds that Albert never claimed title under such deed. In any event, even if the trial court was of the opinion that

2.  it had found actionable fraud as an ultimate fact, the findings do not reveal it, and appellant's counsel concede this in one of their points in support of their motion for a *venire de novo* where they say: "It will be observed that fraud and concealment are not found in the findings as ultimate facts." The trial court did not err in its conclusions of law on the facts found.

Appellant's counsel earnestly contend that the court erred in overruling the motion for a *venire de novo*. It is claimed that the findings are so defective as to preclude support of a judgment, and that, while stating evidentiary rather than ultimate facts, such evidentiary ones establish the ultimate fact of fraud. *Knight* v. *Kerfoot, supra, Maxwell* v. *Wright* (1902), 160 Ind. 515, 67 N. E. 267. It will be noted that it is expressly found in finding No. 25 that in 1865 Albert took possession of the 120-acre tract used by him as a homestead, and thereafter until his death remained in the open, notorious, exclusive possession thereof as against John Davenport, Ruth Gundrum, appellant and any other person, and fenced, ditched and cultivated it, and that after his death appellees have held like possession. Finding No. 26 shows that after the execution of Ruth Gundrum's deed on October 13, 1879, which purported to convey all the remaining land in controversy except fifteen acres, Albert took possession of all of the remaining land, and claimed and exercised the same possessory rights as he did in the 120-acre tract, and that after his death appellees held like possession. Assuming that the findings show evidentiary facts requiring the inference of

fraud that would furnish a basis for a constructive trust, it is apparent that there is an entire absence of a finding of any evidentiary fact that Albert was guilty of concealing from Ruth Gundrum or appellant any cause of action based on his fraud.

Appellees claim that on the facts exhibited in the findings appellant's cause of action was barred by our statutes of limitation. Appellant seeks to meet this contention by asserting that statutes of limitation do not run against suits of purely equitable cognizance, or express trusts, nor in any case do they commence to run where the complainant was ignorant of the facts if they were concealed by the respondent. §302 Burns 1914, §300 R. S. 1881.

Since the adoption of the Civil Code in 1852, there has been but one form of action for the enforcement of private rights, and distinctions

6. between actions at law and suits in equity have been abolished. 2 R. S. 1852 p. 27; 249 R. S. 1881; §249 Burns 1914. Generally it may be said that, since the abolition of separate chancery forums and forms, statutes of limitation apply alike to suits formerly cognizable at law or in equity. *Cassel* v. *Lowry* (1904), 164 Ind. 1, 4, 72 N. E. 640; *Hatfield* v. *Jackson* (1875), 50 Ind. 507; *Pilcher* v. *Flinn* (1868), 30 Ind. 202; *Potter* v. *Smith* (1871), 36 Ind. 231. It is true that statutes of limitation do not commence to run in cases of express continuing trusts until repudiation thereof, because the possession of the trustee is presumed to be that of

7. the beneficiary. 2 Wood, Limitations (4th ed.) §200. But the trust pleaded in appellant's cross-complaint is not express. Were

8. it of such character, it could not be impressed on land, because it was in parol. §4012 Burns 1914, §2969 R. S. 1881. The suit is not to enforce the parol promise of Albert, made in 1861, to re-

convey to his father, or to enforce the alleged parol promise to convey to Ruth at John's death. Were such theory relied on the statute would forbid remedy because the promise was not in writing. The cross-complaint seeks the declaration and enforcement of a constructive trust—species of implied trusts—based on the fraud of Albert, of which the false promises to reconvey to John and to convey to Ruth formed constituent elements. The relief granted in constructive trust cases is not

9.  measured by the fraudulent promises of the wrongdoer, but on the other hand may be contrary thereto. Where the basis of the constructive trust—fraud—is shown, relief is administered in consonance with equity rules. *Orth* v. *Orth* (1896), 145 Ind. 184, 200, 201, 42 N. E. 277, 44 N. E. 17, 32 L. R. A. 298, 57 Am. St. 185, and authorities cited; 4 Words & Phrases 3436; 1 Perry, Trusts (6th ed.) §73; 3 Pomeroy, Eq. Jurisp. (3d. ed.) §§1055, 1056; *Long* v. *Mechem* (1904), 142 Ala. 405, 38 South. 262; *Henderson* v. *Murray* (1909), 108 Minn. 76, 121 N. W. 214, 133 Am. St. 412; Brown, Statute of Frauds (5th ed.) §84; *Ahrens* v. *Jones* (1902), 169 N. Y. 555, 62 N. E. 666, 88 Am. St. 620.

It is provided by §302 Burns 1914, *supra*, that where a person liable to an action conceals the fact from the knowledge of the person entitled

10.  thereto the action may be commenced within the limitation period after the discovery of the cause. It is appellant's theory that, since

11.  she discovered her cause of action but shortly before suit was brought, the same is not barred. On the issue of concealment the burden was on appellant. *Lemster* v. *Warner* (1894), 137 Ind. 79, 36 N. E. 900; *Carver* v. *Carver* (1884), 97 Ind.

497, 512; 25 Cyc 1427. Such concealment must consist of more than mere silence or general declarations. There must have been some trick or artifice to prevent a discovery, or some material fact concealed by positive or affirmative act or deed. *Jackson* v. *Jackson* (1897), 149 Ind. 238, 242, 243, 47 N. E. 963, and authorities cited. No fact, ultimate or evidentiary, is stated in the findings, showing concealment within the intent of §302 Burns 1914, *supra*. Statutes of limitation are applicable to constructive trusts, and appellant's cause was barred before Albert Davenport's death. *Churchman* v. *City of Indianapolis* (1887), 110 Ind. 259, 11 N. E. 301; *Parks* v. *Satterthwaite* (1892), 132 Ind. 411. 32 N. E. 82; 39 Cyc 607; 25 Cyc 1155; Angell, Limitations §§469, 471; *Beckford* v. *Wade* (1805), 17 Ves. Jun. 87; *Newman* v. *Newman* (1906), 60 W. Va. 371, 55 S. E. 377, 7 L. R. A. (N. S.) 370.

Appellant further contends that if it be conceded that the statute of limitations bars relief on the cross-complaint, appellees were nevertheless without remedy on their complaint to quiet title, because of the findings of evidentiary facts in relation to fraud and a constructive trust; that statutes of limitation may be interposed as a shield, but not used as a sword. Generally speaking, statutes of limitation are laws of repose, which merely affect the remedy, and are available only as defenses. *Cassell* v. *Lowry, supra*. But open, notorious, exclusive, uninterrupted and adverse possession of real estate for twenty years, regardless of color of title, is as effectual to confer complete title on the occupant as a grant, and he may use it as a shield for defense or as a means to recover a possession lost after its acquisition. *Roots* v. *Beck* (1887), 109 Ind. 472, 9 N. E. 698; *Bowen* v.

*Preston* (1874), 48 Ind. 367; *Pyott* v. *State* (1907), 170 Ind. 118, 122, 83 N. E. 737; *Rennert* v. *Shirk* (1904), 163 Ind. 542, 554, 72 N. E. 546; 19 Am. and Eng. Ency. Law 146; *Craven* v. *Craven* (1913), 181 Ind. 533, 103 N. E. 333, 105 N. E. 41. There was no error in overruling appellant's motion for a *venire de novo*. *Knight* v. *Kerfoot, supra*.

One of the grounds urged for a new trial was the refusal of the court to permit appellant's husband to testify to a transaction between Ruth Gundrum and Albert Davenport. The offered evidence was properly excluded. §§522, 525 Burns 1914, §§499, 501 R. S. 1881. There was evidence to support the decision of the trial court and appellant's motion for a new trial was properly. overruled. Judgment affirmed.

NOTE.—Reported in 112 N. E. 998. See under (1) 39 Cyc 26; (2, 4, 5) 38 Cyc 1980, 1981; (6, 7) 25 Cyc 1057, 1150; (9) 39 Cyc 637; (10) 25 Cyc 1213. Statute of limitations: nature and purpose, 101 Am. St. 145; applicability to defenses, 4 Ann. Cas. 933, Ann. Cas. 1915A 608, 25 Cyc 983; applicability as between a trustee and the beneficiary of an express trust, 3 Ann Cas. 200, 13 Ann. Cas. 1165. Possessory title, use of as offense, 46 L. R. A. (N. S.) 487; 2 C. J. 251, 255; 1 Cyc 1135, 1138.