Smith, Trustee, *et al. v.* The Wells Manufacturing Company *et al.*

---

SMITH, TRUSTEE, ET AL. *v.* THE WELLS MANUFACTURING COMPANY ET AL.

[No. 17,912. Filed April 29, 1897. Rehearing denied Sept. 22, 1897.]

APPEAL.—*Same Question Presented by Demurrer to Answer and Special Finding.—Harmless Error.*—Error in overruling a demurrer to one of the defendant's answers, is harmless, where the special finding follows the facts alleged in another answer. *p. 335.*

CORPORATION.—*Authority of President When Acting as Agent.*—Where a mortgage of a corporation is being attacked by other creditors of the mortgagor as fraudulent, instructions by three of the five directors of such corporation to the president, authorizes him to release the mortgage, under an agreement with the other creditors that they will grant an extension of time to the mortgagor. *pp. 340, 341.*

APPEAL AND ERROR.—*Special Finding.*—A statement of an ultimate fact in a special finding will be disregarded on appeal, where the primary facts are also found and necessarily lead to a different conclusion. *p. 342.*

CORPORATIONS.—*Release of Mortgage.—Ratification by Trustee.*—A release of a mortgage to a corporation is ratified where a trustee of the corporation appointed by the stockholders, with full authority to close up its business, takes a new mortgage to secure the notes, and brings suit thereon. *pp. 342, 343.*

SAME.—*Directors Cannot Repudiate an Act of the Stockholders.*—The board of directors of a private corporation possess no authority to repudiate any act done by the authority of the stockholders. *p. 343.*

| | |
|---|---|
| 148 | 333 |
| 148 | 113 |
| 150 | 125 |
| 150 | 442 |
| 151 | 399 |
| 151 | 508 |
| 152 | 668 |
| 148 | 333 |
| 153 | 593 |
| 148 | 333 |
| 154 | 185 |
| 148 | 333 |
| e158 | 204 |
| 148 | 333 |
| 159 | 620 |
| 148 | 333 |
| 168 | 665 |

Smith, Trustee, *et al. v.* The Wells Manufacturing Company *et al.*

MORTGAGE.—*When a Creditor Cannot Object Because Executed in Fraud of Creditors.*—A creditor cannot object to a mortgage of his debtor on the ground that it was executed and received in fraud of creditors, where it was given in pursuance of an agreement between himself and the mortgagee. *p. 344.*

SAME.—*Preference by Insolvent Corporation.*—A corporation in failing circumstances, and with assets less than its liabilities, may, like an individual, prefer creditors by executing mortgage or other liens upon its property. *p. 345.*

CORPORATIONS.—*Contract.—Fraud.*—The mere fact that a contract is made between two corporations having common directors does not render the contract fraudulent or void. *p. 345.*

From the Hancock Circuit Court. *Affirmed in part and reversed in part.*

*R. A. Black, J. N. Doty, J. B. Black, E. B. Pugh, O. B. Jameson, R. O. Hawkins* and *H E. Smith*, for appellants.

*M. Marsh* and *W. W. Cook*, for appellees.

HACKNEY, J.—In the year 1892, the Wells Manufacturing Company, a corporation of Indiana, was indebted to numerous mercantile creditors in the sum of $17,000.00, and to the Findlay Window Glass Company in the sum of $9,000.00, and, to secure said indebtedness, executed, on the 8th day of March, 1892, a mortgage on its plant and certain of its other personal property to said Findlay Company, and on the 13th day of June, 1892, executed a mortgage to Smith, as trustee for said mercantile creditors, upon said plant. The proceedings herein were upon the consolidation of two suits by said mortgagees, respectively, to foreclose said mortgages, and the questions here presented arise upon a special finding of facts, with conclusions of law thereon.

A question has been discussed as to the ruling of the lower court in overruling a demurrer to the second answer of the Findlay Company to the complaint of said

trustee, said answer alleging that the trustee's mortgage was invalid because executed in preference of creditors when the Wells Company was insolvent. The special finding follows the facts alleged in the third answer of the Findlay Company, and the ruling upon said demurrer, if erroneous, was harmless, since a correct statement of the law may be made upon the facts pleaded in the second answer as they are found in the special finding. *Woodward* v. *Mitchell,* 140 Ind. 406; *Scanlin* v. *Stewart,* 138 Ind. 574; *Ross* v. *Banta,* 140 Ind. 120; *Walling* v. *Burgess,* 122 Ind. 299; *State, ex rel.,* v. *Vogel,* 117 Ind. 188. This conclusion is conceded, substantially, by the learned counsel for the trustee.

The facts found specially were, that the Wells Company, on the 8th day of March, 1892, was indebted to the Findlay Company upon notes, the amount of which, at the date of the judgment, was $12,349.50; that at the same time said company was indebted to Black & Gordon in the sum of $2,668.18, to certain mercantile creditors, represented by Smith, trustee, in the sum of $17,000.00, the balance whereof, at the time of the judgment, was $11,581.07, and to others; its aggregate indebtedness being $39,000.00, the larger portion of which was overdue and wholly unsecured, except the sum of $3,400.00, secured by a pledge of manufactured goods. At that time the assets of the Wells Company consisted of personal property, stock in trade, notes and accounts of the value of $20,300.00, and its real estate and plant, of the value to it of $15,000.00, but, for the purposes of sale, of an uncertain value, and said company was insolvent and had then abandoned any hope, prospect or expectation of continuing business as a going concern. At and after that time James A. Wells and wife, and Ulysses G. Baker and wife, severally owned and held a large

proportion of the capital stock in both said Findlay Company and said Wells Company, and said James A. Wells and Ulysses G. Baker were directors in each of said companies, the said Wells being the president, and said Baker secretary of said Findlay Company. On said 8th day of March, 1892, the said Wells Company executed a mortgage on all its real and personal property, including its plant, to secure its then existing indebtedness to said Findlay Company and said Black & Gordon, the said Wells then well knowing the condition of said Wells Company, and both said Wells and said Wells Company intending and expecting that said Wells Company should cease and discontinue its business. "Said mortgage, however, was not executed or accepted with any fraudulent intent to use the same as a means or instrument of forcing or compelling a composition settlement with other creditors of said" Wells Company, "or of forcing or compelling the granting by them of extension of time of payment of indebtedness unto them." On the 12th day of March, 1892, said Findlay Company commenced suit to foreclose said mortgage, and for the appointment of a receiver to wind up the affairs of said Wells Company, and on said day the court appointed one Cooper such receiver, and he thereupon qualified, gave bond and entered upon the duties thereof. Very soon thereafter said mercantile creditors employed counsel to represent them in proceedings to attack the validity of said mortgage to the Findlay Company and to protect their interests as creditors of said Wells Company, and they were about to institute suit for that purpose, when, on the 4th day of June, 1892, an agreement was reached between said mercantile creditors, said Wells Company, and James A. Wells, acting as president of said Findlay Company, but without special authority in that behalf, whereby said mort-

Smith, Trustee, *et al. v.* The Wells Manufacturing Company *et al.*

gage to the Findlay Company was released by said Wells, so acting as president, and so without special authority in that behalf; said receiver paid the debt so owing to Black & Gordon, turned back to the Wells Company its property and was discharged; said mercantile creditors extended the time for the payment of their claims, taking each six notes, the notes representing respectively 15, 10, 15, 10, 25, and 25 per centum of the several claims; said Findlay Company was to receive no security for its claim until fifteen per centum of said mercantile claims had been paid, and said mercantile creditors, in the name of the appellant, Smith, as trustee, were secured in their said claims by a mortgage of the real estate and plant of said Wells Company. The several elements of said agreement were completed on June 13, 1892, and the Wells Company resumed its ordinary and regular business, there having then occurred no substantial change in the financial condition of said Wells Company since March 8, 1892, as aforesaid, and said Wells Company then in good faith believed that it would be able to continue its corporate enterprise as a going concern, and did continue thereafter so to do for a period of seventeen months. In the execution of said agreement, and of the mortgage of June 13, 1892, said Wells Company and said trustee intended to "thereby hinder and delay the said Findlay Window Glass Company in the collection of its said debt against the Wells Manufacturing Company for an indefinite period."

Upon the questions as to the authority of Wells to release said mortgage to the Findlay Company, and of the ratification by said company of his action in releasing the same, it was found, in addition to the abstract finding, that he had no such authority, that

Smith, Trustee, *et al. v.* The Wells Manufacturing Company *et al.*

when the suit of the mercantile creditors, attacking said mortgage was threatened, said Wells, Baker, and Tappan, three of the five directors of the Findlay Company, consulted about the matter, and Wells was directed to go to Greenfield "and do the best he could" about arranging the matter on behalf of the Findlay Company. While he had never before released a mortgage, he had, with the knowledge of the company, habitually, and in the regular course of business and without action of the board of directors, bought and sold goods, executed, endorsed, and transferred promissory notes, and made contracts for and in the name of said company, and had been actively engaged in the management of its business. During all of said time two of the five directors, other than those above named, were mechanics, working in the factory and taking no active part in the business management. It was found also that when Wells went to Greenfield and took the mortgage in favor of the Findlay Company, he did so upon the same general direction, after consulting with Tappan and Baker, that he should go and do the best he could in arranging the indebtedness to said company. In June, 1893, by action of the stockholders, the Findlay Company "determined to go into voluntary liquidation and cease business, and appointed and elected Samuel J. Tappan (a director and vice-president of the company) as trustee, with authority to do all things necessary to that end."

In July, 1893, Wells surrendered the notes, to secure which, said released mortgage had been executed to the Wells Company, and took from it, in lieu thereof, several notes in amounts proportioned to the stock holdings of the stockholders of the Findlay Company, his object being to distribute said notes to the Findlay company stockholders in such proportions as they so held stock therein. Immediately thereafter said

Tappan distributed to the stockholders of said company about nine thousand dollars of the notes so taken, endorsing the same in the name of said company.

In November, 1893, Tappan, being president of said Findlay Company, and acting as such trustee, then knowing all of the facts as to the release of said mortgage by Wells, and the execution of said other mortgage to Smith, trustee, and the agreement with reference thereto, took from said Wells Company a single promissory note for $11,190.66, payable to said Findlay Company, in lieu of said notes so last taken by Wells for distribution to the said stockholders, he having first procured them from said stockholders. At the same time said Tappan took from said Wells Company a mortgage of the property so theretofore mortgaged to said Smith, trustee, to secure said note of $11,190.66. Two days later Tappan had suit brought to enforce foreclosure for said sum and to appoint a receiver of said property. On the same day, in said suit, one Snow was appointed receiver for the Wells Company and took possession of its property. On December 28, 1893, the board of directors of the Findlay Company, by resolution, repudiated, as unauthorized, and as not the act of said company, and as not having been ratified or approved by it, the release of said mortgage by said Wells, and the action of Tappan, of November 6, 1893, in accepting said note of $11,190.66 and the mortgage securing the same, and directed the surrender of said note to the Wells Company and a demand for the notes described in the mortgage of March 8, 1892, upon which latter notes and the mortgage first mentioned, it was further ordered that suit should be instituted. After demand, etc., and on January 11, 1894, the suit herein consolidated was brought by the Findlay Company upon the notes so surrendered and the mortgage so released, the suit

Smith, Trustee, *et al. v.* The Wells Manufacturing Company *et al.*

upon said $11,190.66 note and mortgage then having been dismissed. It was found also that some four months after releasing said mortgage of March 8, 1892, said Wells reported to Tappan and Baker, directors, that he had done so, and that after fifteen per centum of the mortgage to Smith, trustee, was paid and in November, 1892, the Wells Company would pay $5,000.00 to the Findlay Company. By the terms of the notes and mortgage executed to Smith, trustee, they were past due when, on January 12, 1894, the suit, by said trustee, herein consolidated, was instituted and therein said Snow was appointed receiver for the Wells Company, and was ordered to continue in the possession of its property, and has since sold the mortgaged property, freed of liens, for $4,455.01.

The court rendered conclusions of law that both of the mortgages in suit were void.

The appellees are not represented in this court, and there is no question made in their behalf, but the questions presented and discussed relate to the validity and priority of the mortgages of the appellants respectively.

As to the power of Wells, president, to release the mortgage, of March 8, 1892, to the Findlay Company, it will be observed that it is found generally that he had no such authority, while it is found also that, at a time when suit was pending to foreclose the mortgage and within a few days after its execution, the mercantile creditors had employed attorneys and were threatening to attack the mortgage as fraudulent. At that time it had not been definitely settled in this State whether an insolvent corporation could legally prefer a creditor, nor as to whether one, an officer in two corporations, might act in extending a preference by one of such corporations to the other. In this situation three of the five directors of the Findlay Company,

those having charge of the company's business affairs, instructed Wells, the president, to do the best he could in the matter. It is argued for the Findlay Company that this instruction did not include authority to release the mortgage, since that was a sacrifice of the rights of the company.

There is certainly little reason to claim that, under this comprehensive authority, Wells could not do any act which the board of directors might have done. Nor can it be seriously questioned that the board of directors would not be presumed to possess authority to decide whether the company should stand upon the mortgage, engage in extended and expensive litigation to maintain its validity upon questions of doubt and uncertainty, or should release the mortgage, when to do so would secure to the mortgagor, by an extension of time upon the mercantile debts, and a division of payments into small sums at favorable intervals and thus enable it, the mortgagor, to more easily remove $17,000.00 of its indebtedness, and thereby place the Findlay Company in a better position for the collection of its debt than it would be without a mortgage. Of course, with the validity of the mortgage conceded, its release was not, for the Findlay Company, a wise step if it had been taken by the board of directors, but it was not less wise because taken by the president. But without the concession of the validity of the mortgage the step would not appear so unwise. However, the question of authority did not depend upon the wisdom of the decision, but it rested upon the right to make a decision. As we have said, there can be no doubt of the right of the board to decide and, in our opinion, the instruction to Wells to do the best he could gave him the authority to decide as to what course was best.

The question of the effect of the court's general

statement that Wells had no authority to release the mortgage has been discussed.   As to whether that statement was a conclusion of law, or the statement of the ultimate fact, and whether it precludes further inquiry by this court have been discussed.   We have no doubt that the statement was intended as of the ultimate fact, but where the primary facts are stated and they lead to but one conclusion, the statement of the ultimate fact will be disregarded, since a statement of the ultimate fact is required only where, from the primary facts, either of two conclusions may reasonably be drawn.  *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39; *Smith* v. *Wabash R. R. Co.,* 141 Ind. 92; *Board, etc.,* v. *Bonebrake,* 146 Ind. 311.

The primary facts found reasonably support but one inference of fact, the presence of authority from the board to employ his own judgment in meeting and averting the threatened law suit.   So far as the conclusion that no authority existed may have involved a question of law, if it did involve such question, the conclusion would in like manner be rejected.

Whether the act of Wells in releasing the mortgage had been ratified by the Findlay Company is a question which has been discussed, and, while the holding that authority existed to release it may seem to render a decision upon the question of ratification unnecessary, if we should be in error as to the existence of such authority, a conclusion against said company as to the ratification would support the judgment of the trial court against it.   Leaving out of view the conduct of the board, and of Wells prior to June, 1893, when the stockholders turned the affairs of the Findlay Company over to Tappan, the facts disclosed that Tappan, to whom the stockholders gave authority to do all things necessary in liquidating and closing up the business of the company, knew of the prior mort-

gage, and of the facts attending its release, knew that the original notes had been renewed, and many, if not all of the stockholders knew this, for they received, severally, the renewal notes to their individual credit; he took up the renewal notes distributed to the stockholders, procured a new note in lieu thereof, procured a mortgage to secure the same, and brought suit on that note and mortgage.

The stockholders had given Tappan as full authority, with reference to the closing of the company's business, and the securing, collecting, and disbursing its assets, as the board of directors could have possessed. The authority was sweeping and comprehensive. Subsequently, it is found, that by resolution, the board of directors repudiated all that he did. The court does not find as a primary or as an ultimate fact that Tappan did not ratify the action of Wells in releasing the mortgage, nor is it found, as a question of fact, that the action of the board had the effect to recall and obviate all that he did. As a question of law the board of directors possessed no authority to repudiate any act done by the authority of the stockholders. With the knowledge and authority possessed by Tappan his acts, as stated, were a complete confirmation or ratification of the release of said mortgage. It has been insisted that the silence of the finding as to a ratification of the release must be held as a finding against the Findlay Company on that question. We do not decide the question, but there are authorities to the point that where a corporation asserts that an act of its officer is not binding upon it, the burden rests upon it to establish not only the absence of authority in the officer to do the act but that it has not ratified the act done. *National State Bank* v. *Vigo County National Bank*, 141 Ind. 352; *Patterson* v. *Robinson*, 116 N. Y. 193, 22 N. E. 372; *Oakes* v. *Cat-*

*tarraugus, etc., Co.,* 143 N. Y. 430, 26 L. R. A. 544, 38 N. E. 461; Thompson, Corp., vol. 5, section 5967; Clark on Corp., p. 155; Taylor on Private Corporations, section 238, note 1, p. 201; *Chemical, etc., Bank* v. *Kohner,* 85 N. Y. 189.

The validity of the mortgage of the appellant, Smith, trustee, is denied on behalf of the Findlay Company upon the grounds that it was executed and received in fraud of creditors; first, because it was intended to hinder and delay the Findlay Company in the collection of its claim against the Wells Company, and second, because executed by an insolvent corporation. The first of these objections to the validity of that mortgage loses all of its force when it is considered that the Findlay Company is bound by the agreement and mortgage which extended the time of the payment of the mercantile claims, and gave the mortgage to Smith, trustee, precedence, and thereby hindered said company. Not taking into consideration the question as to whether the language of section 6645, Burns' R. S. 1894 (4920, R. S. 1881), "All conveyances * * * made * * * with intent to hinder" or "delay * * * creditors * * * shall be void," means with a fraudulent intent so to hinder, it is evident that it was not the purpose of that provision to deny the right of persons to contract for delay and to be bound by their own stipulations which delay or hinder them in the collection of their credits. But the language of the statute is more explicit, for it provides that any such conveyance, etc., "shall be void as to the persons sought to be defrauded," not that they shall be void generally. Another provision of the statute, section 6649, Burns' R. S. 1894 (4924, R. S. 1881), is, that "the question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact," and many decisions of this

court so hold. In this case it is not found as a question of fact that the mortgage of the trustee was executed with a fraudulent intent.

The second objection to the validity of that mortgage is not tenable since our court adheres to the doctrine that a corporation in failing circumstances and with assets less than its liabilities may, like an individual or a copartnership, prefer creditors by executing mortgage or other liens upon its property. *Levering* v. *Bimel*, 146 Ind. 545; *Henderson* v. *Indiana Trust Co.*, 143 Ind. 561; *First Nat'l Bank* v. *Dovetail, etc., Co.*, 143 Ind. 550; *First Nat'l Bank* v. *Dovetail, etc., Co.*, 143 Ind. 534.

It is held also that the mere fact that a contract is made between two corporations having common directors does not render such contract fraudulent or void. *Evansville, etc., Co.* v. *Bank of Commerce*, 144 Ind. 34.

Upon a fair construction of the special findings it does not appear, as counsel for the Findlay Company seem to imply, that the Wells Company was under receivership at the time the mortgage to the trustee of the mercantile creditors was executed. The agreement, preceding the mortgage, comprehended the discharge of the receiver and the return of the property to the company, and that was done. The property covered by the mortgage did not, therefore, continue, if it became so by the receivership, a part of the trust fund or estate for the benefit of the Findlay Company as a creditor. By the terms of the agreement the Findlay Company stipulated for the release of the property from the receivership, and it cannot, therefore, claim that the property was held for its benefit.

We conclude that the court erred in its conclusions of law with reference to the invalidity of the mortgage to the appellant, Smith, trustee, and as to him

the judgment is reversed with instructions to restate the conclusions of law in accordance with this opinion. As to the appellant, the Findlay Window Glass Company, the judgment is affirmed.