## KINGAN AND COMPANY, LIMITED, v. MARYLAND CASUALTY COMPANY.

[No. 9,607. Filed March 7, 1917. Rehearing denied June 20, 1917. Petition for leave to file petition to transfer denied October 4, 1917.]

1. INSURANCE. — Indemnity Insurance.—Policy.—Construction.— Duty of Insurer.—Under an insurance policy indemnifying assured against loss from liability resulting from loss of life or personal injury, not exceeding $5,000 for the loss of life or injury to any one person, providing that, if suit is brought on account of accident covered by the policy, the company will at its own cost defend such suit, unless it shall elect to settle or pay the assured the indemnity provided by the policy, where suit has been brought the insurer is not obligated to accept an offer of settlement for less than the face of the policy, but it may elect between settlement, defense of the action, or payment of the stipulated indemnity. p. 311.

2. INSURANCE. — Indemnity Insurance.—Policy.—Construction.— Liability of Insurer.—Extent.—Under an insurance policy in-

demnifying assured against loss from liability resulting from loss of life or personal injury, not exceeding $5,000 for the loss of life or injury to any one person, providing that, if suit is brought against assured on account of accident covered by the policy, the insurer will at its own cost defend the action, unless it shall elect to settle or pay the assured the stipulated indemnity, the insurer, by electing to defend the suit of a person injured, rather than to settle, did not assume the full risk of the litigation, but was obligated to indemnify the assured only to the extent of the primary indemnity specified by the policy and for such costs as counsel and witness fees, court costs, etc., although the judgment recovered was in excess of the stipulated indemnity. p. 313.

3. INSURANCE. — *Indemnity Insurance.—Policy.—Construction.— Liability for Interest on Judgment.*—Where an insurance policy indemnifies against loss or damage, but not against liability, the insurer is not chargeable with interest on a judgment against the assured until the latter has suffered loss by paying the judgment, and submitting the proofs required by the provisions of the policy. p. 315.

4. INSURANCE. — *Indemnity Insurance.—Policy.—Construction.— Acts of Assured.*—The fact that insured apparently recognized that his policy indemnified him only against loss or damage, and not against liability, by paying a judgment covered by the policy before making a demand on the insurer, and by furnishing proofs of payment in accordance with the terms of the policy, should not be held to conclude insured, since such recognition may have been based on prudential reasons. p. 316.

5. INSURANCE. — *Indemnity Insurance.—Policy.—Construction.— Insurer's Liability for Interest on Judgment.*—A liability policy indemnifying assured against all immediate loss or damage from liability resulting from loss of life or injury to person, provides indemnity against loss or damage and not against liability, so that where insured paid a judgment covered by the policy, the insurer's liability for interest thereon dated from the time of payment only. p. 316.

6. INSURANCE.—*Indemnity Insurance.—Action on Policy.—Tender.—Burden of Proof.*—In an action by the insured against the insurer on a liability insurance policy where defendant pleaded tender, the burden was on defendant to establish the facts constituting the tender. p. 319.

7. TRIAL.—*Findings.—Ultimate and Evidentiary Facts.* — Only ultimate facts may be properly embodied in a finding, and a mere evidentiary fact included therein does not strengthen it. p. 319.

8. TENDER.—*Conditional Tender.—Effect.*—In an action by the

insured against an insurer, a statement by a representative of the insurer, that he desired to tender insured the amount of money which the company claimed to be the amount due and offered a certain sum in full settlement of its liability, to which the insured replied by refusing the tender with the statement that he did so because he understood that the offer was made on the theory that the amount tendered covered the insurer's entire liability, to which no reply was made, the offer by the insurer was conditional and did not constitute a valid tender. pp. 319, 321.

9. TENDER.—*Tender of Money.—Elements.*—Where money is to be paid, a tender, to be effective, must involve the proper amount and be unconditional, and the circumstances of the offer must be such as to leave the creditor free to accept the amount offered without prejudice to him, and without thereby rendering himself liable to be held to have impliedly admitted that the amount tendered is all that is due. p. 320.

From Marion Superior Court (91,960) ; *Joseph Collier*, Judge.

Action by Kingan and Company against the Maryland Casualty Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*W. H. H. Miller, C. C. Shirley, Samuel D. Miller* and *William H. Thompson,* for appellant.

*Alvah J. Rucker, James E. Rocap* and *J. F. Damman,* for appellee.

CALDWELL, J.—Appellant brought this action against appellee to recover on an indemnity insurance policy. A trial resulted in a decision and judgment for costs in appellee's favor. The principal questions presented arise on exceptions reserved to conclusions of law stated on a special finding. The portions of the policy material to the inquiry here are as follows:

"In consideration of the terms, conditions and agreements herein contained, and subject thereto * * * The Maryland Casualty Company * * * hereinafter called 'the company,' does hereby insure Kingan and Company, * * * hereinafter called 'the assured,' * * * against all im-

mediate loss or damage caused by explosion * * * of the steam boilers or either of them, designated and described in the schedule on this policy, as follows: * * *

C. For loss from liability of the assured resulting from the loss of life or personal injury·of any person or persons; but the liability of the company for loss of life or injury of any one person shall not exceed the sum of Five Thousand Dollars. * * *

D. * * * In no event shall the liability of the company exceed the sum insured by this policy. * * *

Conditions and Agreements: * * *

4. It (the insurer) shall have charge of all negotiations and suits on account of claims for damages to persons. * * * But the assured shall at all time render to the company all co-operation and assistance in its power. If any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company's home office every summons or other process as soon as the same shall have been served on him, and the company will *at its own cost* defend such suit in the name and on behalf of the assured, unless the company shall elect to settle the same or pay the assured the indemnity provided for by the provisions of this policy. The assured shall not incur any expense on account of personal injuries without the consent of the company previously given in writing, except that claims for bodily injuries may be settled by the assured on the basis of loss of wages of the injured person for the time of total disability and reasonable expenses for nursing and medical attendance, for which the company will reimburse the assured on receipt of a suitable release without prejudice to the rights of the assured under this policy. * * *

9. * * * No claim shall become payable until proofs and affidavits stating * * * the amount of the loss or damage, and a detailed statement of all other insurance if any covering loss of life or injury to person * * * shall have been furnished to the company."

The policy is set out in full in the finding, which is further to the following effect: On February 29, 1908, while the policy was in force, a steam boiler covered by the policy and located in appellant's plant exploded, and as a proximate result thereof certain physical injuries were sustained by William E. King, appellant's employe. Appellant duly notified appellee of the occurrence. On October 9, 1908, King brought suit against appellant in the Marion Circuit Court to recover damages on account of his injuries, charging appellant with negligence in maintaining the boiler. Appellant notified appellee of the institution of the action as required by the policy, whereupon appellee directed counsel to appear thereto for appellant, and thereafter contested said action in appellant's name. A trial resulted in a verdict against appellant for $7,500, returned March 3, 1910, on which judgment was rendered July 2, 1910. Appellee thereafter, under the terms of the policy, and in appellant's name, appealed from the judgment to the Supreme Court of the state. On February 20, 1913, the judgment of the trial court was affirmed. On May 1, 1913, appellant paid the judgment, which consisted of the following items: Principal, $7,500, interest, $1,422, costs, $131.25, total, $9,053.75, and immediately thereafter made demand on appellee for reimbursement, pursuant to the terms of the policy as follows: Appellant demanded the sum of $6,079.58, consisting of principal, $5,000, interest from March 3, 1910, to the date of payment, $948.33, costs, $131.25. Thereupon appellee presented to appellant a draft for $5,139.80, being $5,000 principal, $131.25 costs, and $8.55 interest from date of payment of the judgment by appellant to the date of presenting the draft. Appellee refused to accept the draft, assigning the following reasons: First, that it was not a legal tender;

second, it was less than the amount due; third, a reason expressed in the following language: "Since the letter written to you on May 1, 1913, in which $6,079.58 was demanded on behalf of Messrs. Kingan & Company, Ltd., it has been discovered that prior to the commencement of this suit, your company had the opportunity to settle and compromise the same by the payment of an amount less than the face of the policy, and that you refused to settle the same on that basis. Under these circumstances, on behalf of Messrs. Kingan & Company, Ltd., we now demand payment by you of the sum of $9,053.75, being the full amount of the judgment, interest and costs, paid in this case by Messrs. Kingan and Company, Ltd., together with interest thereon from the date of its payment, namely, May 1, 1913." On May 16, 1914, Mr. Dammann, an authorized representative of appellee, had the following conversation with Mr. Miller, an authorized representative of appellant:

"Mr. Dammann: 'Now Mr. Miller, in view of your letter of the 12th to the Company, concerning the claim of Kingan & Company, Ltd., against the Maryland Casualty Company, on account of the accident to William King in his suit for judgment and satisfaction, I want to make a tender to you as a representative of the Kingan & Company of that amount of money which the Company considers the extent of its liability under the policy of insurance which covered the King case, that is the boiler policy. It is my understanding from the correspondence, that you satisfied a judgment for Kingan & Company, by the payment of $9,053.75, and that you claim that amount of money from the Maryland Casualty Company. The Maryland Casualty Company denies owing that amount of money to Kingan & Company, and offers in payment of its liability under the boiler policy referred to $5,149.25, which repre-

sents Five Thousand Dollars, which is the principal of the sum named in the policy, Fifteen Dollars, interest, up to and including the 19th of May, 1913, and $131.25, and I have here the cash,—and I understand you do not raise a point about that—and if you would rather have it in any other form we are perfectly willing to put it in some other form.' And to which statement the said Miller replied as follows:

"Mr. Miller: 'Understanding that this tender is made on the theory that the amount tendered covers the entire liability of the Maryland Casualty Company under the policy of insurance referred to on account of the case of *King* v. *Kingan & Company, Ltd.*, the tender is refused, but no question is made to the form in which the actual money is tendered.'"

The court further finds "that at said time defendant tendered and offered to pay plaintiff the said sum of $5,149.25, as recited in said conversation." Appellee thereafter retained said sum in its possession up to December 16, 1913, (being the day it filed its answer to the complaint), when it paid said sum to the clerk of the court for the use and benefit of appellant, which sum remained in charge of the clerk of the court until about July 3, 1914, when appellee in open court waived any right it had to said fund.

Before King commenced his suit against appellant, he made to appellee a proposition to settle his claim for $4,000. After the suit was commenced, he made to appellee, through its attorneys, a subsequent proposition to settle for $6,000. Appellee rejected each proposition, and made no counter-proposition. Before King commenced his action, and also while it was pending, appellant requested appellee to compromise it with King, but appellee refused to do so. Appellant's attorneys at its request appeared in the King action to protect its interests, and aided in the defense of the cause,

but appellee, through its attorneys, had full and complete charge of the litigation, and conducted the defense thereof, both in the trial court and on appeal in the Supreme Court.   On the special finding of facts the court stated general conclusions of law in appellee's favor, to the effect that appellant is not entitled to recover, and that appellee is entitled to recover costs.

In support of its assignment that the court erred in the conclusions of law, appellant states alternatively three propositions, in substance, as follows:    (1) That, under the facts found, appellant is entitled to recover the full amount paid by it in discharge of the King judgment, consisting of principal $7,500, interest $1,422, and costs $131.25, aggregating $9,053.25; (2) that, if appellant is in error in its first proposition, it is entitled to recover the full amount of appellee's liability as fixed by clause C of the policy or $5,000, plus costs of litigation, $131.25, plus interest on the entire judgment from the rendition thereof, $1,422, total $6,-553.25; (3) that, if appellant is wrong in both its first and second propositions, the tender of May 16, 1913, was conditional, and therefore ineffective, and that appellant is entitled to recover $5,000, the amount of appellee's liability as fixed by clause C, plus costs $131.25, being a total of $5,131.25, together with interest thereon from the date on which appellant discharged the King judgment to the date on which appellee in open court waived any right it had to the amount of the tender deposited with the clerk, or from May 1, 1913, to July 3, 1914, but that appellant is entitled to a credit in the amount of the tender as so deposited, and that judgment should have been rendered for the residue, amounting, as estimated by appellant, to $341.19.

In support of its first proposition, appellant argues in effect that, by the terms of clause C, it was appellee's

duty absolutely and at all events to protect appellant against loss growing out of liability to King, provided such protection could have been accomplished by the payment of not to exceed $5,000; that the finding discloses that appellee had an opportunity to settle with King for less than $5,000 before he instituted action, and that it failed and refused to do so, although appellant's liability to King was clear and well known to appellee; that, had appellee settled with King when the opportunity presented itself, complete protection would thereby have been afforded appellant by the payment of less than $5,000; that appellee's failure to avail itself of such opportunity to settle resulted in a necessity that $9,053.75 be paid to discharge appellant's liability to King as determined by the courts; that the excess of liability over the $5,000 limit specified by clause C of the policy resulted from appellee's breach of duty owing appellant, and that, as a consequence, appellee's liability to appellant should be measured by the entire sum paid by the latter, in satisfaction of the King judgment, $5,000 thereof by reason of the express provisions of the policy, and the residue thereof by reason of such breach of duty as defined by the policy properly construed.

Appellant, in support of its first proposition, appeals also to that part of specification No. 4 of the policy, providing that:

"If any suit is brought against the assured * * * the company will *at its own costs* defend such suit in the name and on behalf of the assured, unless the company shall elect to settle the same, or pay the assured the indemnity provided for by the provisions of the policy."

It is appellant's contention, based on the above provisions of specification No. 4, as applied specifically to this case, that when King brought suit against ap-

pellant, and appellee had been duly notified thereof, the latter was put to its election whether it would settle with King when the opportunity arose, or pay to appellant the $5,000 indemnity specified by clause C of the policy, and thus be discharged from all liability, or defend the action at its own costs in appellant's name; that, if it elected the last alternative, it thereby assumed the entire risk of the litigation; that the risk so assumed covered the excess of the judgment, including costs and interest accruing to the time of its affirmance by the Supreme Court, over and above the indemnity specified by clause C, and hence that appellee is liable to appellant for the entire amount paid by the latter in discharge of the King judgment. Appellant appeals also to that part of clause C providing that appellee insures appellant "for loss from liability of the assured resulting from the loss of life or personal injury of any person or persons," and argues that such provision should be construed with the provision of specification No. 4 last quoted, and that when so construed "they import an absolute promise to protect and indemnify the assured to the extent of its loss, save only in the event the appellee shall elect to settle the case or pay to the assured the amount of the first indemnity."

Appellant's second proposition, as stated by us above, involves the liability of appellee to return to appellant the item of interest that accrued on the judgment from the time of its rendition in the trial court to the time of its final affirmance, amounting to $1,422. Appellant argues in support of such proposition as follows: "Even if appellee had a right to postpone its election until after trial and judgment in the court below, such judgment is conclusive against appellee both as to liability and the amount of damages, especially when affirmed on appeal, and appellee had no right to delay payment pending the appeal, and thereby cause appel-

lant to pay the interest accruing on the judgment pending said appeal," and hence appellant concludes that it is entitled to recover such interest in addition to the indemnity specified by the policy, and the costs of the action.

In arguing that an increased liability arose against appellee by reason of its failure to settle with King, appellant assumes that its liability to King was clear, and that appellee knew that it was clear. If it should be conceded that the facts involved in such assumption are important here, in the absence of any finding or allegation in 'the complaint that appellee was guilty of fraud in its failure to settle with King, then it may be said that the finding does not sustain the assumption. The finding goes no further than that appellee had an opportunity to settle with King for $4,000, and later for $6,000, and that it failed and refused to do so, although appellant requested it to make the settlement. The finding is silent as to whether appellant's liability was clear, and what appellee's knowledge on the subject was, and also whether the sum that King was willing to accept in settlement was reasonable, when measured by the severity of his injuries.

Appellant's argument is based also on the assumption that it was appellee's duty under the policy to protect appellant against King's claim, provided 1. such protection might have been accomplished at an expense of not exceeding $5,000. That is, appellant apparently contends that when the claim was made against appellant by King, based on his injuries, it was appellee's duty to effect a settlement, if it could be done without exceeding the $5,000 limit, regardless of the apparent merits of the claim, or the reasonableness of the sum demanded. We do not so interpret the policy. Primarily, appellee's agreement was to the effect that in case any person suffered a personal injury

under such circumstances as to render appellant liable to respond in damages therefor, and in case appellant incurred loss or damage on account of such liability, the incident being within the scope of the policy, appellee should make restitution to appellant, if such loss or damage did not exceed $5,000, or to the extent of such sum if such loss or damage exceeded $5,000. By the terms of the policy, the planting of an action by King put appellee to its election whether it would defend the action at its own cost and in the name and on behalf of appellant. The alternatives presented to appellee were to settle with King, or pay $5,000 to appellant. It was appellant's duty to elect to defend or to settle or to pay. It was not its duty to settle to the exclusion of the other alternatives. So the courts hold under similar policies. *Wisconsin Zinc Co.* v. *Fidelity, etc., Co.* (1916), 162 Wis. 39, 155 N. W. 1081; *Rumford, etc., Paper Co.* v. *Fidelity, etc., Co.* (1899), 92 Me. 574, 43 Atl. 503; *New Orleans, etc., R. Co.* v. *Maryland Casualty Co.* (1905), 114 La. 153, 38 South. 89, 6 L. R. A. (N. S.) 562, and note; *Schmidt* v. *Travelers' Ins. Co.* (1914), 244 Pa. 286, 90 Atl. 653, 52 L. R. A. (N. S.) 126. The institution of the suit created no other duty than to elect. By electing to defend, and by defending, appellee discharged its full duty toward appellant arising at that stage of the proceedings. As there was no duty to settle, the argument must fail. Liability against appellee cannot, in the absence of fraud, be predicated on the fact that it elected to defend, rather than to settle. *Wisconsin Zinc Co.* v. *Fidelity, etc., Co., supra.* Liability might, however, be based on negligence in conducting such defense, but there is neither a finding nor charge to that effect here. *Wisconsin Zinc Co.* v. *Fidelity, etc., Co., supra; McAleenan* v. *Massachusetts, etc., Ins. Co.* (1916), 173 App. Div. 100, 159 N. Y. Supp. 401.

Proceeding to the second phase, appellant argues that appellee, by electing to defend rather than to settle, assumed the full risk of the litigation. In other words, that appellee by declining to settle with King, and by electing to defend, impliedly or constructively agreed to pay any loss that appellant might be subjected to as a result of the litigation, and it therefore obligated itself to restore to appellant the full amount that the latter was required to pay to discharge the King judgment, principal, interest, and costs. As to whether such result followed an election to defend must be determined from the policy, the provisions of which applicable are found in clause C and specification No. 4. By the former, appellee insured appellant against all immediate loss or damage growing out of a liability within the scope of the policy to the extent of $5,000. By the latter, it agreed that in the event of suit being brought, and if appellee elected to defend, it would, "at its own cost defend such suit." Appellee's agreement then was that it would indemnify appellee for loss growing out of liability to the extent of $5,000, and if it elected to defend the involved suit, to the extent of the additional sum comprehended by the phrase "at its own cost." Such was the extent of appellee's undertaking. If then, appellant having paid the sum which became necessary in order that the King judgment might be discharged, appellee became liable to pay it any sum in excess of $5,000, such liability arose by virtue of the agreement indicated by the provision that it would "at its own cost defend such suit." The phrase "at its own cost," and equivalent expressions found in indemnity insurance policies in like connections as here, are with a harmony approximating uniformity held to include only such costs as counsel and witness fees, court costs, and the like. We have found no decision holding that such expressions include

the amount of the judgment proper recovered in excess of the primary indemnity specified by the policy, or that the insurer by electing to defend thereby guarantees that the judgment ultimately recovered will not exceed the primary indemnity specified. We are therefore required to hold against appellant on its first proposition. See the following: *Rumford, etc., Paper Co.* v. *Fidelity, etc., Co., supra; Coast Lumber Co.* v. *Aetna Life Ins. Co.* (1912), 22 Idaho 264, 125 Pac. 185; *Schmidt* v. *Travelers' Ins. Co., supra; Connolly* v. *Bolster* (1905), 187 Mass. 266, 72 N. E. 981; *New Orleans, etc., R. Co.* v. *Maryland Casualty Co., supra;* note to *New Amsterdam Casualty Co.* v. *Cumberland Telephone, etc., Co.,* 12 L. R. A. (N. S.) 478; note to *Aetna Life Ins. Co.* v. *Bowling Green Gaslight Co.,* 43 L. R. A. (N. S.) 1128.

Appellant cites *Sanders* v. *Frankfort, etc., Ins. Co.* (1904), 72 N. H. 485, 57 Atl. 655, 101 Am. St. 688. Both the policy and the facts involved in that case are somewhat similar to those here. There, however, the insurer was insolvent, and the injured employe was unable to collect the $9,000 judgment which he had recovered against the insured. The policy there, as here, specified $5,000 as the limit of the indemnity. Under the circumstances, the employe proceeded by bill in equity against the insurer, seeking to compel the application of the specified indemnity on the judgment. The question involved was whether the insurer could be required to pay the indemnity before the insured had suffered loss or damage by being forced to pay the judgment. The question of the obligation of the insurer to pay the entire judgment by reason of an election to defend was not involved or decided. The policy there provided in substance that, if suit should be brought, the insurer might elect to defend against the proceeding, or to settle with the injured employe, or to pay

the indemnity to the insured. It is held that the insurer by electing to defend impliedly agreed to defend successfully; that, as an execution is a part of a proceeding, the insurer by such election therefore impliedly agreed to defend against the former as issued on the judgment; that, as payment is ordinarily the only defense that may be successfully interposed against an execution, the insurer, by agreeing to defend against the proceeding successfully, in effect assumed the insured's liability to the extent of the specified indemnity, and, "because they assumed—in legal effect agreed to pay—the assured's liability to this plaintiff to the extent of $5,000, equity requires them to perform their agreement by payment to him." We do not believe that that case supports the proposition that the insurer by electing to defend thereby obligates itself to pay the entire judgment recovered, although it exceeds in amount the specified indemnity.

Appellant's second proposition is in effect that appellant is entitled to recover in addition to the amount of indemnity specified by clause C and the cost of the action, interest on the judgment of $7,500 from its rendition by the trial court, or $5,000 plus $131.25, plus $1,422, or a total of $6,553.25.

We cannot concede under any view of the policy that such proposition as broadly stated and involving as it does a claim to interest on the entire judgment rendered below, may be held to be sound. We proceed to determine whether appellant is entitled to recover any portion of the interest claimed as above stated. Indemnity policies are, as a general rule, by virtue of their provisions and the nature of the insurer's undertaking grouped by the courts into two classes: First, those indemnifying against loss or damage; and secondly, those affording protection against liability. Under a policy of the first class, it

is necessary that the insured show that he has suffered damage or loss as by actually paying the judgment fixing his liability in order that he may have recourse to such policy.   Where a policy belongs to the second class, the insured may turn to it for relief as soon as his liability has become legally fixed and established, although he has not suffered actual loss, as by being required to discharge such liability.   If the policy here belongs to the first class, appellant's proposition is for such reason unsound, as interest could not be charged against appellee until it was in default, and it was not in default until after appellant had suffered loss by paying the judgment and submitting whatever proofs the policy demanded.   After that time, appellee, of course, would be chargeable with interest until payment made or properly tendered.   There are indications that appellant apparently recognized that the policy here belongs to the first class:   Thus, it paid the judgment here before making a demand on appellant, and it alleged in the complaint that it "as required by said policy of insurance, furnished the defendant with necessary proofs of such payment."   Such recognition, however, should not be held to conclude appellant, as it may have been based on reasons purely prudential.

As we have shown, the policy here is to the effect that thereby appellee insured appellant "against all immediate loss or damage  *  *  *  as follows:   C.  For loss from liability of the insured, resulting" etc.   Policies containing such provision or its equivalent are as a rule, and by the weight of authority, held to belong to the first class.   See the following: *Campbell* v. *Maryland Casualty Co.* (1912), 52 Ind. App. 228, 97 N. E. 1026; *Connolly* v. *Bolster, supra; Wisconsin Zinc Co.* v. *Fidelity, etc., Co., supra; Munro* v. *Maryland Casualty Co.* (1905), 48 Misc. Rep. 183,

96 N. Y. Supp. 705; *Carter* v. *Aetna Life Ins. Co.* (1907), 76 Kan. 275, 91 Pac. 178, 11 L. R. A. (N. S.) 1155; *Frye* v. *Gas, etc., Co.* (1903), 97 Me. 241, 54 Atl. 395, 59 L. R. A. 444, 94 Am. St. 500; *Allen* v. *Gilman, etc., Co.* (1905), 137 Fed. 136; *Allen* v. *Aetna Life Ins. Co.* (1906), 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A. (N. S.) 958, and note; *Cushman* v. *Carbondale Fuel Co.* (1904), 122 Iowa 656, 98 N. W. 509; *Conqueror Zinc, etc., Co.* v. *Aetna Life Ins. Co.* (1910), 152 Mo. App. 332, 133 S. W. 156; *Poe* v. *Philadelphia Casualty Co.* (1912), 118 Md. 347, 84 Atl. 476; *Cayard* v. *Robertson* (1910), 123 Tenn. 382, 131 S. W. 864, 30 L. R. A. (N. S.) 1224; *Beyer* v. *International, etc., Co.* (1906), 115 App. Div. 853, 101 N. Y. Supp. 83; *Goodman* v. *Georgia Life Ins. Co.* (1914), 189 Ala. 130, 66 South. 649; *Burke* v. *London Guarantee, etc., Co.* (1905), 47 Misc. Rep. 171, 93 N. Y. Supp. 652; note to *Patterson* v. *Adan,* 48 L. R. A. (N. S.) 184.

As appellee was not in default until after appellant had paid the judgment, it follows that the former's liability to pay interest dates from that time, and that we are required to hold against appellant on the second proposition. *Maryland Casualty Co.* v. *Omaha Electric, etc., Co.* (1907), 157 Fed. 514, 85 C. C. A. 106; *Conqueror Zinc, etc., Co.* v. *Aetna Life Ins. Co.; supra; Munro* v. *Maryland Casualty Co., supra; Aetna Life Ins. Co.* v. *Bowling Green Gaslight Co., supra,* 1130, note; *Davison* v. *Maryland Casualty Co.* (1908), 197 Mass. 167, 83 N. E. 407; *Coast Lumber Co.* v. *Aetna Life Ins. Co., supra; Puget Sound, etc., Co.* v. *Frankfort, etc., Ins. Co.* (1909), 52 Wash. 124, 100 Pac. 190.

An examination of the cases above cited will disclose that, in the policy involved in a number of them, there was a provision—absent from the policy here—referred to by the cases as "the no action provision," to the ef-

fect that no action should be brought against the insurer as respects any loss under the policy, unless it should be brought by the assured himself to reimburse him for a loss actually sustained and paid by him. It will be observed that some force is given to such provision by many of the cases in determining that the policy involved belonged to the first class, as above indicated. There was such provision, numbered provision 8 in the policy involved in *Campbell* v. *Maryland Casualty Co., supra,* in addition to a provision in the body of the policy equivalent to that last quoted in the policy here. In the Campbell case, this court apparently held that the provision included in the body of the policy was sufficient to classify it, the court saying: "The language quoted from the body of the policy, as well as the language in provision number No. 8, * * * would seem to indicate that the purpose of the contract was to indemnify the assured against loss and not to protect it against liability." That case subsequently received the approval of the Supreme Court by the denial of a transfer. On the proposition now under consideration, *Sanders* v. *Frankfort, etc., Ins. Co., supra,* is not in harmony with the views which we have expressed. That case is discredited by a number of the cases above cited, including *Campbell* v. *Maryland Casualty Co., supra.* There are also several recent cases, not cited in the briefs and involving the rights of an injured employe, as against the insurer of an employer, that contain language apparently not in harmony with our conclusion, or with many of the cases above cited. Among such cases are the following: *Davies* v. *Maryland Casualty Co.* (1916), 89 Wash. 571, 154 Pac. 1116, L. R. A. 1916D 395; *Maryland Casualty Co.* v. *Peppard* (1916), 53 Okl. 515, 157 Pac. 106, L. R. A. 1916E 597; *Patterson* v. *Adan, supra.* In these cases, force is given to the fact that the insurer controlled the litiga-

tion to the exclusion of the insured. Here, also, the insurer had charge of the defense in the King case, but appellant, by attorneys of its own selection, participated actively therein. Here appellant, recognizing its obligation to do so, paid the King judgment before making any demands on appellee. The rights of an injured employe are not involved. It follows that, in this case, it is not necessary to determine, and we do not determine, the rights of such an injured employe under such a policy as is involved here, based on some equitable consideration, growing out of the fact that, having recovered a judgment against his employer, he is for some reason unable to collect it.

We proceed to the question of tender. The burden was on appellee to establish the facts constituting the tender as pleaded. We have hereinbefore set out in full the facts respecting such tender as embodied by the court in its finding. Such facts consist wholly of a conversation between Mr. Dammann and Mr. Miller, set out in the finding verbatim. The facts as found were evidentiary, rather than ultimate. It is true that in the finding immediately following the statement of the conversation the court added the following: "That at said time defendant tendered and offered to pay plaintiff said sum of $5,149.25, as recited in said conversation." It is evident though that by such statement in the finding the court refers to the physical act of offering the money to appellant, rather than that thereby the court intended to reduce the ultimate fact of a tender. Only ultimate facts may properly be embodied in a finding. A mere evidentiary fact does not strengthen it. We might very consistently terminate this discussion on the ground that the ultimate fact of a tender is not found, but if we should assume for purposes of discussion that the situation here is such

that this court might from the evidentiary facts found deduce the ultimate fact, as to which see *Knight* v. *Kerfoot* (1915), 184 Ind. 31, 110 N. E. 206; *Shedd* v. *American Maize, etc., Co.* (1915), 60 Ind. App. 146, 163, 108 N. E. 610; *Smith* v. *Wells Mfg. Co.* (1897), 148 Ind. 333, 342, 46 N. E. 1000; *Horn* v. *Lupton* (1914), 182 Ind. 355, 361, 105 N. E. 237, 106 N. E. 708; and *Harris* v. *Riggs* (1916), 63 Ind. App. 201, 112 N. E. 36, 38, still on such assumption, we do not believe that the finding discloses a tender. Mr. Dammann's statement was to the effect that he desired to tender that amount of money which his company claimed to be the amount due. He then referred to the fact that appellant claimed that the amount of the liability was $9,053.75, and that appellee claimed the amount to be $5,149.25. He thus emphasized the fact of a controversy. Next he stated that he offered the latter sum "in payment of its liability." Mr. Miller then in behalf of appellant refused the tender with the statement that he did so on the ground that he understood that the offer was made on the theory that the amount tendered covered the entire liability. Mr. Dammann received such statement in silence.

Among the elements of a tender, where money is to be paid, in order that such tender may be effective as such, are that it must involve the proper amount and

9. be unconditional. If either of such elements is lacking, the tender is ineffective. The circumstances of the offer must be such as to leave the creditor free to accept the amount offered without prejudice to him, and without thereby rendering himself liable to be held to have impliedly admitted that the amount tendered is all that is due. It is held that a sum offered as "a settlement," or "in full discharge," or "as payment in full," is invalid. 38 Cyc 137, 152; *Reed* v. *Armstrong* (1862), 18 Ind. 446; *Martin* v. *Bott* (1896),

17 Ind. App. 444, 46 N. E. 151; *Bickle* v. *Beseke* (1864), 23 Ind. 18; *Smith* v. *School District* (1913), 89 Kan. 225, 131 Pac. 557, Ann. Cas. 1914D 139; *Union, etc., Mining Co.* v. *Shandon Mining Co.* (1913), 18 N. M. 153, 135 Pac. 78; *Noyes* v. *Wyckoff* (1889), 114 N. Y. 205, 21 N. E. 158.

It is held that a tender made of all that is admitted to be due, or that where the sum offered is all that the person making the tender considers to be due, or 8. as all that is due, or where the sum is offered as the amount of the creditor's bill, or as the balance due upon a note, is valid. Hunt, Tender §239. The author says, however, in the same section: "The illustrations given are dangerously near the dividing line between conditional and unconditional tenders, and such expressions ought to be avoided in making a tender." It is also held that where the circumstances attending and surrounding the tender create an equivocal or ambiguous situation, the question of the validity of the tender is one of fact for the jury to determine under proper instructions. *Miller* v. *Holden* (1846), 18 Vt. 337; *Eckstein* v. *Reynolds* (1837), 2 Nev. & P. 256. Mr. Dammann, by his statement, at least created a situation so uncertain as to his purpose that Mr. Miller was justified in seeking to ascertain what the former had in mind. Mr. Dammann, however, stood silent. The circumstances were such as to require that he make himself clear. He could have easily said that he was not seeking to create an appearance of accord and satisfaction, or to force from Mr. Miller an admission based on the things done and said, but that his purpose was merely to offer the amount which his company claimed to be due, leaving the appellant free to accept without any prejudice as to the additional sum which it claimed to be due. We are impressed, even

on the assumption above indulged, that the situation here did not show a valid tender.

Other questions are presented, but they are not of controlling importance.

The judgment is reversed, with instructions to the court to restate its conclusions of law to the effect that appellant is entitled to recover from appellee the sum of $5,131.25, with interest thereon at six per cent. from May 1, 1913, and that appellee is entitled to have applied thereon the said sum of $5,149.25, offered and paid into the clerk's office as a tender, with interest thereon from July 3, 1914, and that appellant is entitled to recover costs. The court is directed to enter. judgment accordingly.

NOTE.—Reported in 115 N. E. 348. Indemnity insurance, construction of policy, 100 Am. St. 775.