DOOLITTLE, EXECUTOR, ETC. *v.* KUNSCHIK ET AL.

[No. 19,505. Filed December 19, 1962.]

126

*Hammerschmidt & Bonewitz,* of South Bend, for appellant.

*Crumpacker, May, Beamer, Levy & Searer,* of South Bend, for appellee.

*Philip Carlton Potts,* Assistant U. S. Attorney, of South Bend, *Morton Hollander* and *Mark R. Joelson,* U. S. Department of Justice, Washington, D. C., for intervenor United States of America.

BIERLY, J.—Wayne R. Doolittle, as Executor of the Estate of Isaac H. Doolittle, Deceased, appellant herein, brings this appeal from an adverse decision in the St. Joseph Superior Court No. 2 of St. Joseph County. The appellant is the defendant and cross-complainant below.

The appellee, Gail Kunschik, the daughter of Isaac H. Doolittle, and half-sister of the appellant, brought this action demanding that certain United States Savings Bonds in possession of appellant-executor and which had been inventoried by him as a part of decedent's estate be stricken from the inventoried assets; that the appellee be delcared the sole owner of the same, and said bonds be delivered to her.

Appellant filed a cross-complaint in two paragraphs. He alleged in the first paragraph that appellee, Gail Kunschik, was a constructive trustee for the proceeds of said bonds, that the trial court so hold her a constructive trustee for the proceeds of said bonds and order her as trustee to deliver the proceeds of said bonds to the estate. In the second paragraph of the cross-complaint, appellant prays that the appellee be declared a resulting trustee for the proceeds of said bonds, and that appellee, Gail Kunschik, as resulting trustee, deliver the proceeds over to the decedent's

estate for distribution in accordance with the Last Will and Testament of Isaac H. Doolittle, Deceased.

Pleadings raised the issues to determine whether or not Gail Kunschik, appellee, would be designated a trustee based upon the theory of a resulting trust. Appellant, by his cross-complaint of two paragraphs sought a determination that appellee, Gail Kunschik, as a trustee under either one of the two theories advanced in said cross-complaint be directed to surrender the proceeds from said bonds to the appellant's estate for distribution in compliance with the will of the decedent.

Trial was had by the court with a finding in favor of appellee, Gail Kunschik, on her complaint, and against the defendant-appellant. The court further found in favor of appellee and against appellant on appellant's cross-complaint. Consistent judgment on finding was entered thereon by the court.

Appellant timely filed a motion for a new trial which was overruled by the court. This appeal was perfected within the rules.

Specifications in the motion for a new trial set forth by appellant were:

"1. The decision of the court is not sustained by sufficient evidence," and
"2. The decision of the court is contrary to law."

Appellant's Assignment of Errors charged error by the court in overruling his motion for a new trial.

The factual situation in the case at bar may thus be briefly summarized:

Dr. Isaac H. Doolittle, from the early 1930's and continuously up to his death in 1947, was engaged in "research and the preparation of a certain manuscript purporting to deal with the history of the Doolittle

Family," and thereby had compiled a voluminous record which was in existence but had never been published. The writings composing this manuscript were the subject referred to in the correspondence between Dr. Doolittle and his daughter, Gail D. Kunschik, and others.

In early 1943, Dr. Doolittle wrote his daughter, Gail, that he contemplated setting up a fund for defraying the cost of publication of "The Story of the Doolittle Family" authorized by himself; that he expected to invest $3,000.00 in cash in Series E Government Bonds and have the same issued in the names of Dr. Isaac Doolittle or Mrs. Gail Kunschik, and thence placed in escrow with Gail Kunschik as a fund to be converted in cash and the proceeds, as much thereof as needed, to meet expenses of the publication of 1,000 copies of said story aforesaid. This agreement with the daughter, Gail, was contingent upon the death of Dr. Doolittle, prior to the publication of the manuscript. If this situation came to pass, Gail Kunschik would assume the responsibility and labor necessary to have the book published and for such labor and responsibility she was authorized to keep 20 percent of net cash income derived from the sale of the book and the remainder paid equally to his five descendants, one of whom was Gail Kunschik.

Ada Powell, a sister of Gail, testified that she urged Gail to give up the agreement to publish the Doolittle papers. In March, 1944, Gail turned over the bonds to Dr. Doolittle, who accepted the bonds and as a part of his release included the following:

> "These bonds represent all the securities I have ever placed in their custody and I have no further claim against said Gail Kunschik and Paul Kunschik."

Included with the four $1,000.00 (maturity value) bonds were included two $1,000.00 (maturity value) bonds in the names of Dr. Isaac H. Doolittle or Wayne L. Doolittle. These two latter bonds had been placed by Dr. Doolittle in Gail's care, when it appeared that Wayne would likely be inducted into the armed forces.

At the death of Dr. Doolittle, the bonds which were turned over to him by the Kunschiks, were in his possession with the same named beneficiaries as when Gail turned the bonds over to him.

Wayne Doolittle, appellant, testified at the trial that a short time prior to the death of Dr. Doolittle, his father handed him the bonds and stated to him that the bonds were to be used to meet the cost of publishing the family story subsequent to Dr. Doolittle's death.

Appellant comes to this court challenging the overruling of his new trial motion by the trial court.

The first allegation of appellant—that the decision of the court was not sustained by sufficient evidence— would only be applicable to that part of the finding relative to appellee's complaint. But the decision on the appellant's counter-claim or cross-complaint was negative in nature and an assignment of errors questioning the sufficiency of the evidence to support a negative finding or decision on the cross-complaint presents no question for review. *Hayworth* v. *Bromwell* (1959), 239 Ind. 430, 158 N. E. 2d 285; *Hinds, Executor Etc.* v. *McNair, et al.* (1955), 235 Ind. 34, 129 N. E. 2d 553; *Jones et al.* v. *Greiger, Trustee etc. et al.* (1960), 130 Ind. App. 526, 166 N. E. 2d 868; *Metrailer et al.* v. *Bishop et al.* (1959), 130 Ind. App. 77, 162 N. E. 2d 94; *Robison* v. *Page et al.* (1959), 129 Ind. App. 289, 156 N. E. 2d 389.

The crux of appellant's argument on his remaining allegations that the decision on appellee's complaint was not supported by sufficient evidence and that the decision on appellee's complaint and on appellant's cross-complaint was contrary to law, is that either a constructive or a resulting trust was established relative to the United States Government Bonds or the proceeds thereof.

The asserted claim is that the proceeds of the bonds when secured by appellee belong to the estate by reason of a trust set up by the decedent. So, the vital question to be decided is: Who is entitled to own the proceeds of the bonds?

To determine this we must consider the contentions of a resulting and constructive trust.

The fact that the government regulations provide for payment to the party or person named on the bond does not of itself, in our opinion, operate to conclusively establish the real or undisclosed rightful owner of the proceeds after the government has paid the proceeds to the named party. We question severely that the regulations can take away the power and authority of the court to determine who is the actual and true owner of the proceeds and under what conditions such ownership may arise.

It seems to us that we are controlled by the decedent's intent as expressed by what he did or did not do with the bonds as evidencing the right to the proceeds thereof. When Gail Kunschik returned the bonds to her father and he accepted the same and gave her a complete release, we think any trust relationship, if any, existing between them terminated and ceased by mutual consent.

Therefore, Dr. Doolittle having full, complete and absolute control and possession of the bonds could have cashed them in or changed the names of the beneficiaries or payees of the bonds.

Dr. Doolittle died in 1947 holding the bonds for three years after they were delivered back to him and any trust relation thereto was terminated. Now during the three years he said nothing and did nothing concerning appellee's rights to the proceeds of the bonds upon his death. It follows then that his expressed intent was that appellee was to take the proceeds of the bonds and in the absence of any evidence of a trust, wrongful act by appellee, or any bequest to the contrary, there is absolutely nothing to forclose or alter her right under the law and the regulations to the absolute ownership of the proceeds.

Dr. Doolittle made no actual delivery of the proceeds at any time. He invested money in Gail's name and his name with the right of the survivor to take the whole. Although he may have made the investment with the idea of certain use of the proceeds, he was legally authorized to change his original purpose or idea and leave the investment for appellee without reference to his original idea. Whether he did so or not was a fact question for the court upon all the evidence. The court apparently concluded that decedent intended for appellee to take and have the investment (or the benefit of the investment) he had made. There was ample evidence to support the court's conclusion.

We are of the opinion that the trial court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.

Gonas, P. J., Kelley, J., concur.

Pfaff, J., concurs with opinion.

## CONCURRING OPINION.

PFAFF, J.—I agree with the conclusions of the majority opinion in the case but with additional reasons to support the decision reached.

Appellee claimant bases her claims to the bonds and proceeds upon the fact that under the Treasury Department regulations governing the issue and payment of said bonds she, immediately upon the death of the decedent, became the sole and absolute owner. These regulations appear as Treasury Regulations, §315.45 (c).

The appellant estate asserts title to the proceeds of the bonds upon two theories: (1) that the bonds were placed in the names that appear on them in reliance upon appellee's promise to use the proceeds for the publication of the decedent's writings and that appellee is guilty of constructive fraud in asserting a right to the proceeds and therefore should be held to be a constructive trustee; (2) that an oral trust was impressed upon the proceeds of said bonds with the appellee Gail D. Kunschik as Trustee and that the trust in said bonds has failed and therefore the appellee should be held to be a resultant trustee of said bonds.

The court notes that whatever express trust was created, it was created in writing and was not an oral trust as alleged by the estate.

At the outset it is important to note the distinctions between a resulting trust and a constructive trust. A resulting trust has for its function the concept of "intent enforcement" while a constructive trust

arises for the purpose of "fraud rectifying." 2A Bogert Trusts, §451, p. 405 (1953).

Resulting trusts arise in cases where the settlor has by words clearly expressed an intent that a trust exists, where the trust is expressed in ambiguous words, or where there are no words but there are acts from which the court infers an intent that a trust arises.

Constructive trusts are involuntary trusts in which there is no intent to create a trust but a court uses a trust terminology as a method of working out justice and preventing one party from unjustly enriching himself at the expense of another. 2A Bogert Trusts, *supra*, at p. 405.

The constructive trust must be founded in wrong doing. It is an implied trust.

> ". . . It differs from a resulting trust, also implied, in lacking the element of an intention to create a trust. 39 Cyc. 27. A constructive trust arises by operation of law, regardless of any intention to create it, and frequently contrary to the intention of the parties. It has its roots in fraud, actual or constructive, which constitutes an essential ingredient. *Wright* v. *Moody* (1888), 116 Ind. 175, 18 N. E. 608; *Alexander* v. *Spaulding* (1902), 160 Ind. 176, 181, 66 N. E. 694, and authorities cited." *Terry* v. *Davenport* (1916), 185 Ind. 561, 571, 112 N. E. 998.

The Supreme Court of Indiana in *Voelkel et al.* v. *Tohulka et al.* (1957), 236 Ind. 588, 141 N. E. 2d 344, reaffirmed the proposition of the necessity of wrong doing and attempted, by way of dicta, to minimize the extent of the fraud. The Supreme Court without the citation of any authority stated that "most courts, nevertheless, will pay lip service to these notions, and extend themselves in attempts to envision their existence before imposing a constructive trust for breach of such a promise." This we believe to be dicta, but

the court did define a constructive fraud to exist "if there is a breach of confidence coupled with an unjust enrichment which shocks the conscience if it is permitted to stand." Hence, here, to establish a constructive trust there must be an absence of an intention to create a trust, at least a breach of confidence and an enrichment which is unjust.

In the case at bar there existed an express trust, a termination thereof, a relinquishment of all assets by the trustee and a receipt from the settlor releasing the trustee from all further claims whatsoever. Under these circumstances it is difficult to conceive of any breach of confidence on the part of the trustee. The trustee had surrendered all of the assets, had promised to do nothing thereafter, and had been expressly relieved from doing anything. Certainly there were no representations then existing upon which the settlor could have relied to his detriment. Under these circumstances it is difficult to conceive of any breach of confidence on the part of the trustee. The mere participation by the appellee to a greater portion of the decedent's assets in itself is not unjust. As a matter of fact the decedent in his Will did not make an equal distribution of his assets. This does not shock the conscience. The only breach of confidence that could be alleged would be the failure of the appellee to perform some act which the decedent might have had a right to claim, but as to which he had already discharged the appellee.

For the reasons noted the facts here cannot be held to establish a constructive trust.

Under the theory of a resulting trust, there is no substantial disagreement between the parties upon the applicable rules of law. It is well agreed that if, upon the termination of an express trust there is no

beneficiary entitled to the trust property and the trustee for the benefit of the settlor or the person who has succeeded to the settlor's interest unless the settlor manifests an intention that no resulting trust should arise upon the failure or termination of the trust. This is in accord with all the authorities.

Controversy between the parties arises upon the question of whether the decedent, upon the termination of the express trust manifested an intention that no resulting trust should arise.

The parties agree that an express trust was executed and that it was terminated. It is uncontradicted that, upon the termination of the trust, and the return of the trust res by the trustee, to the decedent in the same condition in which they were received from the decedent, the decedent in writing clearly stated "I have no further claim whatsoever upon said Gail D. Kunschik and Paul Kunschik." This was in addition to acknowledgment of the receipt of the bonds.

The appellee claimant contends that this statement of no claim constitutes a manifest intention that no resulting trust arises. The appellant estate in its brief does not sufficiently provide an answer to this argument.

It is to be noted that under the rule where an express trust terminates the remaining trust res is held on a resulting trust for the settlor or in the event of his death, for his estate. It would therefore appear that the estate would acquire no greater right after the death of the settlor than the settlor had during his lifetime and after the termination of the express trust.

Hence, assuming that A, a settlor, gave to B, as trustee, certain cash under the terms of an express

trust, and thereafter the parties by mutual agreement terminated that trust, but B retained the cash and that, in addition to termination of the trust, A released B from any and all calims whatsoever he had against B. Under such circumstances A could not thereafter, successfully seek a decree declaring the cash in the hands of B, the subject of a resulting trust; therefore under the same circumstances A's estate should not be able to obtain such a decree.

Here the language of the release is broad enough to release the claim of a resulting trust. It releases "any further claim whatsoever." It would not seem logical that such release could be effective as against the decedent from March 7, 1944, until the date of his death, and then vanish in favor of the appellant estate, not for the purpose of carrying out what the estate claims is the intention of the decedent, but for the pecuniary gain of others.

I must therefore hold that in view of the release there can be no decree establishing a resulting trust.

NOTE.—Reported in 186 N. E. 2d 803.