In re WHITE TRAILER CORPORATION, White Trailer Inc., Debtors.

Daniel L. Freeland, Trustee, Plaintiff,

v.

Internal Revenue Service, Defendant.

Bankruptcy No. 96–40623.
Adversary No. 00–4013.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Lafayette.

Nov. 30, 2000.

Sheila A. Ramacci, Highland, IN, for Trustee.

Jennifer Gazaille, Washington, DC, for I.R.S.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

The complaint in this adversary proceeding asks the court to equitably subordinate a portion of the Internal Revenue Service's priority tax claim because it has failed to pursue the collection of those taxes from a third party who, allegedly, is also responsible for their payment. The United States contends that the complaint fails to state a claim upon which relief can be granted and seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The matter has been submitted to the court for a decision on the briefs of counsel.

The debtor was a manufacturer of semi-trailers. A 12 percent tax is imposed upon the first retail sale of these trailers, *see*, 26 U.S.C. § 4051(a), which the debtor failed to pay. As a result, the IRS has filed a

priority claim for more than $2,230,000 [1] on account of this excise tax. There has been no objection to this portion of the IRS's claim, so that it is deemed allowed. 11 U.S.C. § 502(a). By this adversary proceeding, the trustee seeks to equitably subordinate the amounts due the IRS on account of the § 4051 taxes to the claims of the debtor's other creditors. The Trustee argues that the claim should be subordinated because the IRS has refused to pursue the collection of those taxes from a third party, Congress Financial, who the trustee contends is also liable for their payment.

Congress Financial loaned money to the debtor under a lockbox arrangement. This arrangement required all the proceeds from the debtor's sales to be remitted to a lockbox controlled by Congress Financial. The collections would be applied to the outstanding balance on the debtor's loan and the resulting reductions in the loan balance would produce an increase in the available credit. It had been the debtor's practice to pass the § 4051 excise tax on to its customers. Consequently, when the customers remitted the invoiced amount to the lockbox, Congress Financial would receive not only the purchase price of the trailers but also the additional excise tax. Congress Financial did not forward any of the amounts collected on account of the excise tax on to the IRS (or remit them to the debtor so that it could do so); instead, it applied all the funds it received to the debtor's outstanding loan balance.

Dismissal under Rule 12(b)(6) is appropriate if, after accepting all of the plaintiff's well pleaded allegations as true [2] and drawing all reasonable inferences in the light most favorable to the plaintiff, *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990), "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Consequently, for the purposes of the defendant's motion, the court accepts as true the trustee's allegations that the debtor imposed a 12% surcharge upon the buyers of its trailers on account of the § 4051 tax, that these customers remitted this amount to Congress Financial under the lockbox arrangement, and that Congress Financial applied the amounts collected to the debtor's outstanding loan balance. The court also accepts as true the fact that the IRS has not pursued Congress Financial for these funds, but has, instead, filed a claim to collect the taxes from the estate. The issue for the court to decide is whether these facts state a claim for equitable subordination.

The Trustee argues that once the proceeds of Debtor's sales were remitted to Congress Financial a trust was created under § 7501 of the Internal Revenue Code, with the result that Congress Financial held the tax portion of the sale proceeds as trustee for the benefit of the United States. The Trustee contends that this caused Congress Financial to become a responsible party, *see*, 26 U.S.C.

---

1. This amount is taken from the IRS's proof of claim, number 868, filed on June 27, 1997.

2. Legal conclusions, cast in the form of factual allegations, are not accepted as true. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979) (court is not required to accept as true legal conclusions either alleged or inferred from the pleaded facts). *See also*, 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d. ed.1990). Rather, the court may undertake its own analysis.

§ 6672(a), whose duty it was to pay the collected funds to the IRS. Under these circumstances, the Trustee believes that the IRS has a separate avenue for the collection of the amounts due it, apart from its claim against the estate, which it has failed to pursue and that this inaction constitutes inequitable conduct such that the claim should be subordinated to the claims of the debtor's other creditors, who can look only to estate for payment of their debt.

■ The Bankruptcy Code authorizes the court, "under principles of equitable subordination, [to] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim. . . ." 11 U.S.C. § 510(c)(1). Congress did not identify what the "principles of equitable subordination" might be because it intended that the courts would be allowed to continue to develop the doctrine. *See, United States v. Noland*, 517 U.S. 535, 539, 116 S.Ct. 1524, 1526–27, 134 L.Ed.2d 748 (1996). It is clear, however, that equitable subordination must be "justified by particular facts," *id.*, 517 U.S. at 540, 116 S.Ct. at 1527, so that the determination must be made on a case-by-case basis.

■ The fundamental principle upon which this action rests is the proposition that a creditor's failure to pursue the collection of its claim from a third party, who may, along with the debtor, also be liable for the obligation, constitutes a sufficient reason to equitably subordinate the creditor's claim against the estate. The validity of this proposition seems to be a question of first impression. Although both the trustee and the IRS have extensively briefed issues such as "categorical" subordination, whether subordination without fault continues to exist, and how much or how little the creditor must do for there to be fault, neither of them has directed the court's attention to a single decision which has discussed the proposition on which this case turns. This dearth of authority is surprising since the basic scenario giving rise to the issue will, at least potentially, exist any time a third party may also be liable for payment of a creditor's claim against the debtor. Given the frequency with which there are guarantors, sureties, co-makers, responsible parties and potentially responsible parties who may also be liable for the payment of a debtor's obligation, one would have thought that someone would have raised the issue before now. Apparently not.

■ Because of conflicting decisions on the issue, the parties differ over whether the possibility of subordination without fault still exists in the Seventh Circuit. *Compare In re Virtual Network Services Corp.*, 902 F.2d 1246, 1250 (7th Cir.1990) ("equitable subordination no longer requires . . . some inequitable conduct")[3] *with Matter of Lifschultz Fast Freight*, 132 F.3d 339, 349 (7th Cir.1997) ("inequitable conduct is still the general rule for equitable subordination"). The court does not need to enter this particular debate because misconduct (or the lack thereof) is only one of several factors the court is to consider in deciding whether subordination is appropriate. In addition to the issue of misconduct, "equitable subordination . . . must not be inconsistent with the provisions of the Bankruptcy [Code]." *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th

---

**3.** *Noland* no longer permits the result reached by decisions such as *Virtual Network* that, at the appellate level, represent the genesis of the concept of subordination without fault. Nonetheless, the Court specifically declined to decide "whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated," *Noland*, 517 U.S. at 543, 116 S.Ct. at 1528, so the issue seems to remain open for discussion.

Cir.1977). *See also, Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1237 (7th Cir.1990); *Lifschultz,* 132 F.3d at 344. *Virtual Network* and similar decisions concluded only that misconduct was not required; it left the other considerations intact. *See, Vitreous Steel Products,* 911 F.2d at 1237. Indeed, in *Noland* the Supreme Court reaffirmed the vitality of this particular requirement when it noted that:

> This last requirement [that subordination not be inconsistent with the requirements of the Code] has been read as a reminder to the bankruptcy court that although it is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable. *Noland,* 517 U.S. at 539, 116 S.Ct. at 1526 (citations and internal quotation marks omitted).

Consequently, subordination is inappropriate when it is based, "not on individual equities," but, instead, "on the supposedly general unfairness of satisfying" a claim in the manner prescribed by the Bankruptcy Code. *Noland,* 517 U.S. at 541, 116 S.Ct. at 1528. In other words, "the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Code." *Noland,* 517 U.S. at 543, 116 S.Ct. at 1528.

The Court's admonition that the circumstances prompting subordination may not include the same type of policy considerations Congress would have evaluated in drafting the Bankruptcy Code is of significance here because Congress has already considered how to deal with claims on which an entity other than the debtor is also liable and its solution does not contemplate subordinating the primary creditor's claim. Quite to the contrary, the Bankruptcy Code specifically contemplates allowing the claim of the primary creditor. It is the claim of the codebtor that must be disallowed or subordinated.

Claims for contribution or reimbursement asserted by codebtors are not allowed unless the codebtor has actually paid something to the primary creditor, either before or after the petition. 11 U.S.C. § 502(e)(1)(B), (e)(2). Until then they are contingent. To the extent the codebtor actually pays the primary creditor, either in whole or in part, the codebtor's claim may be allowed, either by way of contribution or reimbursement, through § 502(e), or subrogation through § 509(a). Nonetheless, any distribution on the codebtor's claim must be subordinated until the primary creditor's claim is paid in full. 11 U.S.C. § 509(c) ("The court shall subordinate . . ."). *See also,* 4 *Collier on Bankruptcy,* ¶ 502.06[6]; ¶ 509.04 (15th Ed. Revised 2000).

To accept the trustee's argument would stand the statutory regimen on its head. Rather than paying the primary creditor and subordinating the claim of the codebtor, the trustee would have the court subordinate the claim of the primary creditor, unless it proceeds against the codebtor. Furthermore, the argument the trustee relies upon—that it is unfair to reduce the funds that are available to pay creditors by paying the IRS's priority claim when there is a solvent third party from which it could also collect—is not unique to the IRS. The same "unfairness" that the trustee sees in the current situation will, at least to some extent, be present anytime the estate is confronted with paying a claim where there is a third party to whom the creditor could also look for payment. The fact that the IRS's claim is entitled to a priority, while most other claims with codebtors would not be, changes nothing. *See, United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 229, 116

S.Ct. 2106, 2115, 135 L.Ed.2d 506 (1996) ("[T]he principle of *Noland* has nothing to do with transfer between classes, as distinct from ranking within one of them."). Although the trustee is not suggesting that the court should subordinate the claim of every creditor who could look to a codebtor for payment, that would be the inevitable result of accepting his position. When the argument is taken to its logical conclusion, it becomes apparent that the trustee is advocating the same kind of categorical approach to subordination that the Court prohibited in *Noland*.

In considering how to deal with the claims of creditors who can also look to an entity other than the debtor for payment, Congress could have, but did not, change the priority such claims are otherwise given. This court may not do so under the guise of equitable subordination. *Noland*, 517 U.S. at 543, 116 S.Ct. at 1528. *See also, Reorganized CF & I Fabricators*, 518 U.S. at 229, 116 S.Ct. at 2115. *Cf., Matter of Ahlswede*, 516 F.2d 784 (9th Cir.1975) (that a trust of which the debtor was a beneficiary might be able to offset debtor's future distributions against its claim did not justify equitable subordination.).

■ The Trustee's argument also rests upon the proposition that the IRS may collect the debtor's unpaid excise taxes from Congress Financial, through 26 U.S.C. § 7501. This portion of the tax code provides:

> Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. 26 U.S.C. § 7501(a).

Section 6672 of the Internal Revenue Code gives teeth to this "trust" by effectively imposing personal liability upon those responsible for seeing that the taxes collected or withheld from others are actually paid to the United States.[4] *See,* 26 U.S.C. § 6672(a). The trustee argues because of § 7501, Congress Financial held in trust the amounts it received from debtor's customers on account of the § 4051 excise tax. To the extent Congress Financial is still in possession of those trust funds, the United States should be able recover them. If, on the other hand, the funds no longer exist, § 6672 makes Congress Financial personally liable for their payment.

Section 7501 creates a trust only where a "person is *required to collect or withhold*" a tax *"from any other person."* 26 U.S.C. § 7501(a) (emphasis added). Its applicability to the funds Congress Financial received rests upon whether the debtor had an obligation to collect the § 4051 taxes from its customers, as opposed to an obligation to pay a 12% tax on each sale. In the first instance, the tax would be imposed upon the buyer, and the seller would be the vehicle through which the tax is collected and remitted to the IRS. In the second, the tax would be imposed upon the seller, and whether or how the consequences of the tax are passed on to the customer is up to the seller.

The language of § 4051 contains no indication that it imposes a tax upon the buyer which the seller is required to collect and remit to the IRS. It states only that "[t]here is hereby imposed on the first retail sale of the following articles ... a tax of 12 percent of the amount for which the article is so sold." 26 U.S.C. § 4051. Similarly, the remaining portions of the

---

4. Section 6672 actually imposes a penalty, equal to the amount of the tax, upon "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by [title 26] who willfully fails" to do so. 11 U.S.C. § 6672(a).

subchapter say nothing that could be construed as imposing an obligation upon the seller to collect this tax from the buyer. *See,* 26 U.S.C. §§ 4052, 4053. The absence of such language casts doubt upon the Trustee's argument that the debtor's unpaid § 4051 taxes are trust fund taxes. This doubt becomes conclusive when § 4051 is compared with more commonly encountered trust fund taxes, such as employee withholding. Social Security (FICA) taxes are "imposed on the income of every individual," 26 U.S.C. § 3101(a), (b), yet, they are to be "collected by the employer of the taxpayer, by deducting the amount of the tax from the wages ..." 26 U.S.C. § 3102(a). Similarly, although incomes taxes are imposed on the individual actually earning taxable income, 26 U.S.C. § 1(a) –(d), an "employer making payment of wages shall deduct and withhold [from] such wages a tax ..." 26 U.S.C. § 3402(a)(1). Less commonly encountered examples can be found in the taxes associated with the use of various services and facilities. These excise taxes are imposed upon the amount paid and the tax is to be borne by the payor. *See,* 26 U.S.C. §§ 4251(a); 4261(a) –(d). Nonetheless, the responsibility for collecting the tax is imposed upon the person receiving the payment on which the tax is imposed. 26 U.S.C. § 4291.

Where Congress wished to ensure that certain taxes were held in trust for the United States, it specifically imposed an obligation to collect them from a third party. It did not do so in connection with the tax imposed by § 4051. In the absence of a statutory obligation to collect the tax imposed by § 4051 from its buyers, the fact that the debtor chose to pass that tax on to its customers, in the form of a surcharge, is not sufficient to render the resulting proceeds "a special fund in trust for the United States" under 26 U.S.C. § 7501. Consequently, the IRS may not use § 7501 to collect those proceeds from Congress Financial.

Without a trust, there is no basis to impose liability on Congress Financial through § 6672. The predicate for liability under that section is that a person must first be "required to collect, truthfully account for, and pay over any tax imposed by [title 26] ..." 26 U.S.C. § 6672. The Trustee's reliance upon cases such as *Mercantile Bank of Kansas City v. United States,* 856 F.Supp. 1355 (W.D.Mo.1994), *Merchants Natl. Bank of Mobile v. United States,* 878 F.2d 1382 (11th Cir.1989), and *United States v. Security Pacific Business Credit, Inc.,* 956 F.2d 703 (7th Cir.1992), for the proposition that the IRS can pursue Congress Financial, as a responsible party, because it exercised power and control over which of the debtor's creditors were paid, is misplaced. Admittedly, those cases stand for the proposition that a lender who exercises control over payments to a debtor's creditors may be liable, as a responsible party under § 6672, for unpaid trust fund taxes. Nonetheless, each of those decisions involved a lender's liability for the borrower's unpaid *trust fund* taxes. They do not stand for the proposition that a lender who exercises control over a debtor's payments can be held liable for *any* unpaid tax. Since the § 4051 tax components included in the debtor's sale proceeds are not "a special fund in trust for the United States," Congress Financial is not a responsible party under 26 U.S.C. § 6672.

 The trustee's final argument is that the IRS could seek the imposition of a constructive trust over the amounts Congress Financial received on account of the § 4051 taxes. To do so, however, requires unjust enrichment, *see, Hunter v. Hunter,* 152 Ind.App. 365, 283 N.E.2d 775, 779 (1972); *Doolittle v. Kunschik,* 134 Ind.

App. 125, 186 N.E.2d 803, 807 (1962) (Pfaff, J. concurring); *In re Nova Tool & Engineering, Inc.*, 228 B.R. 678, 685 (Bankr.N.D.Ind.1998), and the allegations contained in the complaint do not lead to that conclusion. The complaint alleges only that Congress Financial received the amounts attributable to the § 4051 taxes from the debtor's customers and applied them to the debtor's outstanding loan balance. There is no suggestion that Congress Financial has been overpaid or that it received more than what the debtor owed. Admittedly, these circumstances may lead to the conclusion that it was enriched—because it was paid—but the court cannot conclude that it was unjustly so. If there is an injustice in a creditor receiving payment of its debt when others do not, righting that wrong is the function of preference law, *see, e.g.*, 11 U.S.C. § 547(b), and not a constructive trust. *Cf., Matter of Iowa Railroad Co.*, 840 F.2d 535, 545 (7th Cir.1988) ("No case of which we are aware employs the idea of the 'constructive trust' to settle priorities among bona fide business suppliers.").

The Internal Revenue Service's failure to pursue the collection of § 4051 taxes from Congress Financial does not justify the equitable subordination of its claim. Consequently, the Trustee's complaint does not state a claim upon which relief may be granted and this adversary proceeding should be dismissed. An order doing so will be entered.